**B. L. EGGLESTON, Appellant,**

v.

**GEORGE BRAUN PACKING CO. d/b/a
Leonard & Harral Packing Co., Braun
Division, Appellee.**

No. 14914.

Court of Civil Appeals of Texas,
San Antonio.

July 21, 1971.

Brown & Hamby, Big Spring, for appellant.

McGown, McClanahan & Hamner, San Antonio, for appellee.

CADENA, Justice.

B. L. Eggleston, Defendant, appeals from an order of a district court of Bexar County overruling his plea of privilege to be sued in Howard County, the county of his residence. Plaintiff, George Braun Packing Co., d/b/a Leonard & Harral Packing Co., Braun Division (L&H), a Texas corporation, seeks to maintain venue in Bexar County under Subdivision 5 of Article 1995, Tex.Rev.Civ.Stat.Ann., which provides that where a person has contracted in writing to perform an obligation in a particular county expressly named in the instrument, suit upon or by reason of such obligation may be brought against the obligor in such county.

In accordance with an oral agreement, Eggleston would purchase cattle in West Texas. He would then sell and ship these cattle to L&H in San Antonio on a "grade and yield" basis.[1] When Eggleston purchased cattle he would pay for them by drawing a draft against an account maintained by L&H at the Texas State Bank in San Antonio, Bexar County. On their faces, these drafts were the acts of L&H, acting through their agent, Eggleston, who signed in his representative capacity.

When the San Antonio bank received one of such drafts, it would notify L&H of the amount of the draft and the person to whom it was payable. If L&H had received from defendant the cattle in payment for which the draft was given, it sent to the bank a check to cover the amount of the draft and picked up the draft. The bank would then send a cashier's check to the payee.

If the dressed out value of the cattle delivered by Eggleston exceeded the amount of the draft, L&H would send a check in the amount of such excess to Eggleston. If the amount of the draft exceeded the value of the meat, the deficit was charged against Eggleston. At one point, the amount of the drafts exceeded by some $2,800.00 the dressed value of the cattle which Eggleston had delivered to L&H. Eggleston paid this deficit and the parties continued doing business as before, until Eggleston built up a new deficit of $3,814.-87. Eggleston promised that he would make up this deficit by buying a load of cattle with his own funds and shipping them to L&H. At the same time, L&H terminated Eggleston's authority to execute drafts on the L&H account. However, L&H failed to notify the persons with whom Eggleston had been dealing of the revocation of Eggleston's drafting authority.

On August 13, 1968, Eggleston purchased 28 head of cattle from Abilene Auction in Abilene, Texas, giving to the seller a draft on L&H's account in the sum of $4,867.33, although his authority to execute such drafts had been previously terminated. Eggleston shipped these cattle to L&H in San Antonio. L&H, believing the cattle to be those promised by Eggleston for the purpose of making up his deficit, slaughtered the cattle immediately. The cattle yielded meat having a value of $4,-706.98. L&H credited $3,814.87 of this amount to payment of Eggleston's deficit and sent Eggleston its check in the sum of $892.11, the amount by which the value of the meat exceeded the deficit.

A few days later Texas State Bank received the draft given by Eggleston to Abilene Auction in payment for the cattle. L&H refused to pay the draft. However, under threat of suit and in recognition of the fact that persons who had been dealing with Eggleston in the past had no notice of the revocation of his authority, L&H decided to pay the draft. L&H then stopped payment on the $892.11 check which it had sent to Eggleston, and Eggleston returned the check to L&H.

In this suit L&H seeks to recover the sum of $3,975.22, which amount represents

---

1. The cattle, when received by L & H in San Antonio, were slaughtered, graded and paid for at the "dressed out" weights according to the prevailing market price for meat of such grade on the date of slaughter.

the face amount of the draft ($4,867.33) less the credit due Eggleston ($892.11) by reason of the fact that the dressed out value of the cattle ($4,706.98) exceeded the amount which Eggleston owed L&H ($3,814.87) as a result of prior transactions.

L&H contends, first, that since Eggleston had no authority to execute the draft on behalf of L&H, Eggleston's signature operates as his own signature in favor of any person who in good faith pays the instrument and takes it for value. Tex.Civ. Stat.Ann., Bus. & Com., Sec. 3.404(a). Since the draft was drawn on a bank located in San Antonio, which this Court judicially knows is the county seat of Bexar County, then, it is urged, the draft is a written contract by Eggleston to pay in Bexar County and the requirements of subdivision 5 of our venue statute are satisfied.

We assume, without deciding, that the payee of the draft, Abilene Auction, could have maintained a suit on the instrument against Eggleston in Bexar County. However, in this case, L&H, by honoring the draft, ratified the unauthorized execution of the draft by Eggleston, and the instrument then became the instrument of L&H. Ratification is equivalent to prior authority, since it operates retroactively. 2 Tex.Jr.2d, Agency, Sec. 104, p. 551. Becasue of the ratification, the unauthorized signature of Eggleston became the signature of L&H.

Sec. 3.404(b) provides that an unauthorized signature may be ratified for all purposes. The Uniform Commercial Code Comment states that the "ratification relieves the actual signer from liability on the signature," although it does not itself relieve him from liability to the person whose name is signed. Unlike the comment rejected by our Supreme Court in Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co., 465 S.W.2d 933, 936 (1971), this comment accompanied the Code at the time it was adopted by our legislature. Further, its persuasive force is increased by the fact that it is harmonious with general doctrines of the law of agency which state that ratification of an unauthorized act by the purported principal relieves the agent of liability to third parties. 2 Restatement 2d, Agency, Secs. 338, 360 (1958). On ratification by L&H, the payee, Abilene Auction, lost its cause of action against Eggleston on the instrument and, therefore, even if, as L&H contends, when it paid the instrument it succeeded to the rights of Abilene Auction, (a point which we do not here decide), those rights did not include the right to sue Eggleston in Bexar County on the instrument.

L&H next insists that when it ratified the unauthorized act of Eggleston, it became an accommodation maker of the draft and, under Sec. 3.415(e) of the Code, since it paid the instrument, it has a right of recourse on the instrument against Eggleston, whom it describes as the accommodated party. The Code defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." The rule that an accommodation maker who pays the instrument is, as against the accommodated party, subrogated to the rights of the payee is based on the premise that, as between the accommodating and accommodated parties, the accommodated party is primarily liable on the instrument. That is, the accommodation maker signs for the purpose of accommodating some other person who is to provide for the bill or note when it falls due. Lampp v. Farmers' National Bank of Hillsboro, 29 S.W.2d 803 (Tex.Civ.App.—Waco 1930, writ ref'd); 11 C.J.S. Bills and Notes § 737, p. 286.

The course of dealings between L&H and Eggleston in the past establishes clearly that Eggleston was not to be liable to the payees of the drafts which he executed in the name of L&H. L&H was expected to, and did, pay the drafts when presented, and was to be reimbursed by Eggleston. The instrument in question, after its ratification and adoption by L&H, was not ac-

commodation paper, and, therefore, Sec. 3.-415(e) is inapplicable.

While the evidence here is sufficient to support a cause of action in favor of L&H against Eggleston, it is not sufficient to establish that Eggleston, in writing, agreed to pay L&H in Bexar County. Under these circumstances, venue cannot be maintained in Bexar County under subdivision 5 of the venue statute.

The judgment of the trial court is reversed and the cause is remanded with instructions to transfer the cause to Howard County. Rule 89, Texas Rules of Civil Procedure.