JAMES V. FACCIOLLA, JVF, Inc., and Town & Country Construction Company, Appellants;

Kenneth R. Pearson and Kirwin L. Drouet, Cross-Appellants,

v.

LINBECK CONSTRUCTION CORP., MAXXAM, Inc., SHRP Management, Inc., and SHRP Acquisition, Inc., Appellees.

No. 06–96–00091–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 12, 1998.

Decided March 26, 1998.

Richard P. Hogan, Jr., David W. Holman, Holman, Hogan, DuBose, Townsend, Houston, George P. Hardy, III, Hardy & Johns, Houston, G. Wesley Urquhart, Houston, Francis I. Spagnoletti, Spagnoletti & Associates, Houston, for Appellants Facciolla, JVF, Town & Country.

Solace Kirkland Southwick, Thomas M. Farrell, Mayor, Day, Caldwell, Keeton, Houston, for Cross–Appellants Pearson and Drouet.

M. Susan Hardie, Hayden Burns, Burns, Wooley, Marseglia, Houston, for Appellee Linbeck.

Thomas M. Farrell, Mayor, Day, Caldwell, Keeton, Houston, for Appellees, MAXXAM and SHRP, Inc.

Gerald T. Holtzman, Holtzman, Urquhart, Moore, Houston, for Appellee Sam Houston Race Park, Ltd., et al.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

### I. Nature of the Case:

The appellant, James Facciolla, and the related businesses which he owns, JVF, Inc. and Town & Country Construction Company (referred to collectively as "Facciolla"), alleged various breach of contract and tort claims against a number of persons and entities involved in the development and construction of the Sam Houston Race Park horse racing facility in Houston, Texas. Facciolla appeals the failure of the trial court to submit to the jury certain claims and requested instructions against various defendants, including MAXXAM, Inc. (MAXXAM), Linbeck Construction Company (Linbeck), Kirwin Drouet (Drouet), and Kenneth Pearson ·(Pearson). Facciolla also appeals the jury verdict as to the defendant Linbeck, arguing that the failure of the jury to find liability against Linbeck was against the great weight and preponderance of the evidence.

Two of the other defendants, Pearson and Drouet, also appeal the judgment against them, claiming that Facciolla cannot recover both in contract and in tort for one injury.

### II. Facts:

Texas legalized pari-mutuel horse racing in 1987. TEX.REV.CIV. STAT. ANN. art. 179e, *et seq.* (Vernon Supp.1998). After a failed attempt to secure a racing permit, Pearson and Drouet, along with other investors, formed a limited partnership, Sam Houston Race Park Ltd. (SHRP Ltd.), to seek a license. The general partner of SHRP Ltd. was a corporation, SHRP, Inc. Drouet and Pearson each owned 25% of the stock in SHRP, Inc., and other investors owned the remaining 50%. In June 1990, Robert Harter, another named defendant in this suit, acquired 25% of the stock of SHRP, Inc., thereby placing 75% of the stock in the hands of Drouet, Pearson, and Harter.

Also in June 1990, a written agreement was reached between Facciolla and SHRP Ltd. for Facciolla to perform construction consulting services for the partnership. This agreement was later reconfirmed in a letter in March 1991.

On April 3, 1991, SHRP Ltd. entered into an agreement with Linbeck which provided that, in exchange for a $100,000.00 investment in SHRP Ltd., SHRP Ltd. would negotiate in good faith with Linbeck for Linbeck to serve as construction manager/builder of the track. Linbeck would be given the contract for construction services only if its bid was competitive with other bids received.

The Texas Racing Commission held hearings on the SHRP Ltd. race track proposal on May 20–21, 1991. Facciolla testified at

these hearings and told the Commission that he would be serving as the construction manager of the race track, which was his understanding at the time of the hearings.

In July 1991, Facciolla sent a proposal to Pearson outlining his requirements to serve as construction manager of the track. SHRP and Pearson rejected the proposal as uncompetitive. The Racing Commission issued a license to SHRP Ltd. on August 12, 1991. Pearson told Facciolla in January 1992 that neither he nor his companies would be used by SHRP Ltd. as the construction manager, but that Linbeck would be used instead.

SHRP Ltd. had trouble raising the millions of dollars needed to finance the construction of the proposed track, and the project remained dormant for nearly two years. In May 1993, MAXXAM began to look at the possibility of investing in the track. MAXXAM brought in Salomon Brothers, an investment banking firm, to evaluate the track as an investment and assist MAXXAM in obtaining the financing needed. As part of this process, Salomon and MAXXAM performed a due diligence investigation of the track to assess the potential investment. SHRP Ltd. obtained $75 million for the financing of the track through a deal underwritten by Salomon Brothers where MAXXAM obtained 100% of the stock in SHRP, Inc. in exchange for the cash. SHRP, Inc. remained a general minority partner of SHRP Ltd.

Construction began and was completed on time as required by the Texas Racing Commission deadline. The track opened on April 29, 1994.

When Facciolla failed to get the construction contract, he sued those whom he felt were responsible for choosing to use Linbeck. The defendants include MAXXAM, the purchaser of the largest interest in the race track and the 100% owner of the general partner (SHRP, Inc.) operating the race track partnership. However, at the end of Facciolla's evidence, the court granted a directed verdict on all claims asserted against MAXXAM. The defendants also included Linbeck, who Facciolla claims invested $100,000.00 to obtain construction work that was "promised" to Facciolla. Other defendants include Harter, Pearson, and Drouet, three

of the original partners in the track. Other race track entities, including Sam Houston Race Park, Ltd., SHRP Management, Inc., and SHRP Acquisition, Inc., filed for bankruptcy protection and were severed from the suit.

The jury found that Facciolla and SHRP Ltd., acting through its general partner SHRP, Inc., did have an agreement whereby Facciolla would serve as construction manager of Sam Houston Race Park. The jury also found that SHRP Ltd., acting through its general partner, SHRP, Inc., breached that agreement. Also, the jury found that SHRP, Inc., Drouet, and Harter intentionally interfered with the agreement, wrongfully interfered with prospective contractual relations, engaged in a civil conspiracy and, along with defendant Pearson, committed fraud against Facciolla. SHRP, Inc. was found liable in the amount of $400,000.00 for breach of contract damages. SHRP, Inc., Drouet, and Pearson were found jointly and severally liable for damages in the amount of $400,000.00 for noncontract (fraud) damages. That sum was reduced to $300,000.00 by a $100,000.00 settlement from Harter. In addition, $550,000.99 in exemplary damages were awarded against SHRP, Inc. The final judgment was signed on June 18, 1996. SHRP, Inc. did not appeal the judgment against it, and the judgment is now final. Drouet and Pearson did appeal the $300,000.00 award against them, and that appeal will be discussed below.

Other facts pertinent to the points of error will be discussed as necessary under each point.

## III. Facciolla's Claims:

### A. MAXXAM Allegedly Ratified SHRP, Inc.'s Tortious Actions:

In his first two points of error, Facciolla alleges that the trial court erred in granting a directed verdict in favor of MAXXAM because Facciolla claims that the trial record supports MAXXAM's liability for ratification of the various acts of SHRP, Inc.'s breach of contract.

### 1. Standard of Review:

In reviewing a directed verdict, we examine the evidence in the light most favorable to the party suffering an adverse judgment. *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex. 1996); *Brinegar v. Porterfield,* 705 S.W.2d 236, 237 (Tex.App.—Texarkana 1986), *aff'd,* 719 S.W.2d 558 (Tex.1986). We must indulge every proper inference from the evidence against the trial court's action in withdrawing the case from the jury. *Echols v. Wells,* 510 S.W.2d 916, 919 (Tex.1974). It is error for the trial court to instruct a verdict when a material issue is raised by the evidence. *Id.* If there is any conflicting evidence of a probative nature in the record, a determination of the issue is for the jury. *Air Conditioning, Inc. v. Harrison–Wilson–Pearson,* 151 Tex. 635, 253 S.W.2d 422, 425 (1952). An instructed verdict is proper if the evidence is insufficient to raise a fact issue as to one or more fact propositions that must be established for the opponent to be entitled to judgment. *Edlund v. Bounds,* 842 S.W.2d 719, 723–24 (Tex.App.—Dallas 1992, writ denied). Where no evidence of probative force on an ultimate fact element exists, or where the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 709–10 (Tex. App.—San Antonio 1989, no writ); *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd).

### 2. Background:

Facciolla argues that MAXXAM ratified conduct including breach of contract, fraud, tortious or wrongful interference with a contract, or civil conspiracy by awarding the construction contract to Linbeck when the contract had been promised to Facciolla. Facciolla points to three facts which demonstrate that more than a scintilla of evidence existed to show that MAXXAM ratified this conduct: (1) that Linbeck's involvement was contemplated during the time when negotiations were ongoing for the purchase of the race track's assets by MAXXAM; (2) that Linbeck's construction possibilities went hand-in-hand with its $100,000.00 investment; and (3) that MAXXAM abided by and operated under the contract with Linbeck, to the detriment of the promise to Facciolla.

In response, MAXXAM claims that it was merely an investor and cannot ratify conduct of others by its investment; therefore, the ratification claim should fail as a matter of law. Furthermore, MAXXAM claims that Facciolla did not plead a ratification claim in its live petition at the time of trial, nor was the issue tried by consent because no evidence was presented that MAXXAM was aware of Facciolla. Additionally, MAXXAM claims that Facciolla is simply trying to assert an "alter-ego" claim which it is prohibited from doing under the terms of the bankruptcy order regarding the severed defendants.[1]

### 3. Analysis:

Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act which did not then legally bind that person and which that person had the right to repudiate. *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 764 (Tex. App.—Texarkana 1992, writ denied). Ratification may either be express or implied, but it must result from acts clearly evidencing an intention to ratify. *Daugherty v. McDonald,* 407 S.W.2d 954, 958 (Tex.Civ.App.—Fort Worth 1966, no writ).

Facciolla neither pled ratification in its petition, nor attempted to raise it by trial amendment. Facciolla now asserts that it was tried by implied consent. The doctrine of implied consent to trial of such legal theories is invoked only when issues have been fully developed. *Harrison v. City of San Antonio,* 695 S.W.2d 271, 277 (Tex.App.— San Antonio 1985, no writ). Introduction of apparently related evidence alone on an unpleaded issue does not mean parties consented to a trial of the unpleaded issues. *Jay*

---

1. The relevant part of the order reads: "WHEREFORE THE PARTIES AGREE AND IT IS THEREBY ORDERED THAT Facciolla shall not assert against any party any cause of action based on alter ego theories which are property of the Debtors' estates."

*Fikes and Assocs. v. Walton,* 578 S.W.2d 885, 889 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

MAXXAM correctly argues that Facciolla did not plead ratification in its live petition at the time of trial, and Facciolla does not point this Court to any evidence in the record which demonstrates that ratification was tried by consent.

█ Facciolla argues that the judge's comments made after he granted the directed verdict demonstrated that there was enough evidence developed during the trial to show that it was tried by consent and warranted submission of a question on ratification to the jury. The judge granted the directed verdict in MAXXAM's favor after a motion from MAXXAM's counsel which simply asked the judge to grant a directed verdict for all claims against MAXXAM. The trial judge granted the verdict without stating any specific grounds for his ruling. After granting the directed verdict, and after the judge had addressed other issues, MAXXAM's trial counsel asked for clarification of the basis upon which the trial judge granted the directed verdict. The trial judge then stated, "I'm taking Maxxam out because the evidence against them is very, very thin on the theory of ratification." Facciolla argues that this comment shows that the judge found that there was some evidence, more than a scintilla, and a question to the jury was required. Based on the review of the evidence, which we discuss below, a claim of ratification was not supported by the evidence and the directed verdict was proper.

In attempting to show that evidence was adduced at trial to support the ratification claim, Facciolla recites the relationship of the key persons and entities involved with the race track and claims that they were all "interwoven and related."[2] Presumably, Facciolla did this in an attempt to show that MAXXAM adopted or confirmed the prior tortious conduct while having the right to repudiate the conduct, thereby meeting the first requirement of a ratification claim. In his brief, Facciolla never clearly states why the interrelationships give rise to ratification or why these relationships bestow the right upon MAXXAM to repudiate any actions. Facciolla does not point this Court to any evidence in the record which might demonstrate these points.

In response, MAXXAM argues that, as an investor, it neither had the right to make or breach contracts for SHRP Ltd., nor the power to repudiate actions taken by SHRP Ltd. MAXXAM also argues to this Court that there is no case law which supports Facciolla's "investor ratification" theory.[3]

Facciolla next argues that, due to the extensive due diligence investigation done by MAXXAM before it invested in SHRP, Inc., Maxxam should have known of Facciolla's contract. Facciolla further asserts that MAXXAM should also have known of the manner by which Linbeck became a candidate for general contractor, that is, Linbeck's $100,000.00 investment in SHRP Ltd. Facciolla has not pointed this Court to any evidence in the record which demonstrates that MAXXAM had *actual knowledge* of any contract with Facciolla.

Finally, MAXXAM argues that Facciolla failed to show that MAXXAM retained any benefit from the alleged ratification. MAXX-AM argues that since it was merely an inves-

**2.** Facciolla described the position of both James Noteware and Byron Wade: Noteware served as the president of MAXXAM and SHRP, Inc.; while Wade served as in-house counsel for MAXXAM and a director of SHRP, Inc. Facciolla also described how SHRP, Inc. was the general partner in SHRP Ltd., the entity to whom the racing permit was issued, and that MAXXAM was the 100% owner of SHRP, Inc.

**3.** The equitable theory of ratification has been recognized in Texas law in three situations: (1) ratification of an agent's actions by the principal (*see Eggleston v. George Braun Packing Co.,* 470 S.W.2d 69 (Tex.Civ.App.—San Antonio 1971, no writ); *Daugherty v. McDonald,* 407 S.W.2d 954, 958 (Tex.Civ.App.—Fort Worth 1966, no writ)); (2) ratification by a successor corporate entity of a prior entity's contract (*see Vessels v. Anschutz Corp.* 823 S.W.2d 762 (Tex.App.—Texarkana 1992, writ denied)); and (3) ratification as an affirmative defense to a fraud claim (*see Greater Fort Worth and Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149 (Tex.1982); *Gaylord Container v. H.Rouw* Co., 392 S.W.2d 118 (Tex.1965); *B & R Dev. v. Rogers,* 561 S.W.2d 639 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e)).

tor, it could not retain the benefit of any contract or breach by SHRP Ltd., the vehicle of its investment. Facciolla suggests that the "benefit" conferred here was simply that MAXXAM abided and operated under the contract with Linbeck to the detriment of the promise made to Facciolla that he would be the construction manager for the race track. However, the party who abided by the contract with Linbeck would be SHRP Ltd., acting through its agent, SHRP, Inc., not MAXXAM. Apparently Facciolla is trying to argue that MAXXAM received a benefit as an investor, but Facciolla never asserts that MAXXAM received any greater return on its investment or suffered fewer losses due to the contract between SHRP Ltd. and Linbeck.

The evidence raised by Facciolla in support of a ratification claim does not conform to the elements of such a claim. This point of error is overruled.

## B. Failure to Submit Claim Against Linbeck for Negligent Misrepresentation:

Facciolla next argues that the trial court erred in failing to submit its claim of negligent misrepresentation against Linbeck. Facciolla claims that the issue was presented in the pleadings, evidence was offered at trial to support the claim, and the claim was requested for inclusion in the court's charge, but was denied.

### 1. Standard of Review:

Rule 278 of the Texas Rules of Civil Procedure provides a substantive, nondiscretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). To determine whether legally sufficient evidence supported Facciolla's negligent misrepresentation claim, this Court must examine the record for evidence supporting the submission of the question and ignore all evidence to the contrary. *Id.* A trial court may refuse to submit an issue only if no evidence exists to warrant its submission. *Id.*

### 2. Analysis:

In order to show negligent misrepresentation, the complaining party must show: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991). Likewise, negligent misrepresentation claims require reasonable reliance on the representation. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997) (citing *Federal Land Bank Ass'n,* 825 S.W.2d at 442).

In its initial response, Linbeck claims that Facciolla failed to plead this claim properly as to it and, therefore, the claim is waived. However, due to the vague pleadings which do not clearly indicate whether or not Facciolla did make this claim against Linbeck, the merits of this error will be discussed.

Facciolla claims that the elements of a negligent misrepresentation claim were met at trial because evidence established that Linbeck's role in the race track was never revealed to the Texas Racing Commission or Facciolla. Facciolla claims that Linbeck was represented simply as an investor who invested $100,000.00 looking for a return, not as a potential contractor. Facciolla contends that these two facts supply the evidence needed for the first two elements of the claim. Facciolla points to the record to show that Linbeck invested $100,000.00, admitted to having a pecuniary interest in the race track, and admitted to making the investment in hopes of being named the construction manager and general contractor. However, Facciolla never alerts this Court to any evidence whereby Linbeck misrepresented its role to the Racing Commission or Facciolla. Facciolla attempts to show that Linbeck misrepresented its role to the Racing Commission through testimony developed at trial from Harold Hepson, the project director for Linbeck. In that testimony, Hepson was

asked whether Linbeck was named in a section of the application to the Racing Commission which required the applicant, SHRP Ltd., to identify each person who, under a contract, would provide services or equipment to the applicant for the race track. Hepson replied that Linbeck was not identified. However, Facciolla failed to note in his brief that the application to which Hepson was referred during his testimony was filed June 29, 1990, well before Linbeck's investment in May 1991.

Facciolla claims that the third element of a negligent misrepresentation claim was established by evidence that Linbeck never told the Racing Commission of the true purpose of its investment, that is, to vie for construction contracts. Facciolla claims that "[a]ny investor using reasonable care in a publicly-licensed entity should have told all concerned that its investment sought something more than a stake in future profits." As to the fourth element, Facciolla never presents any argument as to what pecuniary loss was suffered or why Facciolla was justified in relying upon the various representations made to the Racing Commission.

In response, Linbeck claims that Facciolla failed to state a claim for negligent misrepresentation because Facciolla never established that Linbeck ever made a misrepresentation directly to Facciolla. Facciolla admitted that no one involved with Linbeck ever made any type of misrepresentation to him. Furthermore, Linbeck contends that any information in the SHRP Ltd. racing application was meant only for the Racing Commission and not for Facciolla. There is no evidence of any misrepresentation by Linbeck to Facciolla, so the negligent misrepresentation claim fails.

Although most negligent misrepresentation cases do involve a representation made directly to the plaintiff by the defendant, circumstances can arise where a negligent misrepresentation made to someone other than the plaintiff results in liability of the defendant to the plaintiff, such as in a situation where a private entity is required to disclose facts to the public. *See* RESTATEMENT (SECOND) OF TORTS § 552 cmt. k (1977). However, Facciolla never explains to this Court how any negligent representations made by Linbeck to the Racing Commission resulted in a duty to Facciolla. We do not think that Facciolla would be in a class of persons toward whom the public information requirement was directed, so as to be considered a victim of any misinformation which may have been communicated to the Racing Commission.

This point of error is overruled.

## C. Failure to Instruct Jury Properly as to Tortious Interference and Civil Conspiracy:

In its fourth and fifth points of error, Facciolla claims that the trial court erred by refusing to submit to the jury two instructions proffered by Facciolla in connection with its claims of tortious interference and civil conspiracy against Linbeck.

### 1. Standard of Review:

 "The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. An instruction is proper if it finds support in any evidence of probative value and if it might be of some assistance to the jury in answering the questions submitted. *St. Louis Southwestern Ry. Co. v. Marks,* 749 S.W.2d 911, 914–15 (Tex. App.—Texarkana 1988, writ denied). The trial court has considerable discretion in submitting explanatory instructions and definitions to enable the jury to render a verdict. *Louisiana & Arkansas Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied). To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. Alleged error will be deemed reversible only if, when viewed in the light of the totality of the circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex. 1986).

### 2. Proposed Instruction for Tortious Interference:

 The trial judge submitted the following question and instructions on the tortious interference claim:[4]

#### QUESTION 4

Did any of those named below intentionally interfere with the agreement, if any, that Facciolla would act as construction manager for the Sam Houston Race Park after the grant of a license by the Texas Racing Commission?

Interference is intentional if (i) committed with the desire to interfere with the agreement or with the belief that interference is substantially certain to result, and (ii) it is not justified.

Interference with an agreement is justified if it results from the good faith exercise of a party's rights or if a party possesses an interest in the subject matter equal or superior to that of the other party.

The defendants have the burden of proving that the interference, if any, was justified.

This instruction closely followed the language found in Texas Pattern Jury Charges 106.01 and 106.03A. 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 106.01, 106.03A (1990).

Facciolla requested the following instruction to accompany the question on the tortious interference claim, which was refused:

A party may interfere with an agreement by persuasion alone, by offering better terms, by giving an indemnity against damage claims to the party or parties induced to breach, or by any act interfering with the performance of a legal duty arising from the agreement.

Following the proposed instruction, Facciolla noted that the instruction "describes events that may legally constitute tortious interference claims, without specifying or emphasizing any in particular." Examples of what could constitute tortious interference, as was requested by Facciolla, seem unnecessary in light of the complete definition given in the trial court's charge.

 While trial courts are authorized to submit instructions that will enable the jury to reach a verdict, they should refuse to submit unnecessary instructions, even if they are correct statements. *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 823 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Facciolla contends that, by denying this instruction, the trial court failed to instruct the jury that any act interfering with the performance of a legal duty arising from the agreement is actionable. The instruction on tortious interference given by the trial court did not limit the type of act which could possibly interfere with a legal duty arising from an agreement, thereby making a laundry list, as proposed by Facciolla, unnecessary. The trial court did not abuse its discretion by refusing to submit this instruction.

### 3. Proposed Instruction on Civil Conspiracy:

 The trial judge submitted the following to the jury:

#### QUESTION 10

Did any of those named below conspire (1) to interfere with the contractual relationship, if any, of Facciolla to act as construction manager for the Sam Houston Race Park after its license was approved (2) to wrongfully interfere with Facciolla's prospective business relationships, if any, to act as [a prospective construction manager or][5] a general contractor for any portion of the Sam Houston Race Park, or (3) to defraud Facciolla?

A "civil conspiracy" means a combination by two or more persons or entities to

---

4. The elements for a claim of tortious interference are (1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.

1991); *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex.1990).

5. The bracketed language was handwritten on the charge and unsigned.

accomplish an unlawful purpose or a lawful purpose by unlawful means. The elements of a civil conspiracy are:

> (a) two or more parties; (b) an object to be accomplished; (c) a meeting of minds on the object or course of action to accomplish; (d) one or more unlawful, overt acts; and (e) damages as a proximate result.

The instructions as submitted to the jury informed the jury of the essential elements required to prove a claim of civil conspiracy. *See Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

The instruction requested by Facciolla and denied by the trial court is as follows:

> An agreement or understanding constituting a "civil conspiracy" need not be formal. The understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy.
>
> Because civil conspiracies are conceived in secrecy and executed in such a manner as to avoid detection and exposure, a civil conspiracy need not be shown by direct evidence and is ordinarily established by circumstantial evidence.

Facciolla contends that this instruction was necessary because proving a case of civil conspiracy is difficult, and a failure to give such an instruction amounts to an incomplete submission of the plaintiff's case.

While Facciolla's requested instruction is a correct statement of the law, it is unnecessary to assist the jury to render a verdict. *See Kirby v. Cruce,* 688 S.W.2d 161, 164 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Facciolla does not cite this Court to a case supporting his requested instruction.

Since each claim, issue, and instruction was properly submitted to the jury, there was no abuse of discretion in refusing the requested instructions. The trial judge's refusal to submit the requested instructions did not result in a denial of rights of the complaining party or the rendition of an improper judgment.

These points of error are overruled.

**D. Error Because Trial Court Failed to Grant a New Trial after Jury Rendered Take–Nothing Verdict Against Linbeck:**

In his sixth, seventh, and eighth points of error, Facciolla contends that the jury's failure to find that Linbeck engaged in fraud, intentional or wrongful interference, and civil conspiracy was against the great weight and preponderance of the evidence.

### 1. Standard of Review:

When the attack is on the factual sufficiency of the evidence charging that the jury finding is against the great weight and preponderance of the evidence, the Court must review all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). Having done so, the appellate court should set aside the verdict only if the evidence is so weak or the finding so against the great weight of the evidence that it is clearly wrong and unjust. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). This Court must be mindful that the jury was not convinced by a preponderance of the evidence. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988). We may not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Thompson v. Wooten,* 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

### 2. Failure to Find Fraud:

 The trial court submitted to the jury the following question on fraud:

### QUESTION 8

Did any of those named below commit fraud against Facciolla?

Fraud occurs when a party conceals or fails to disclose a material fact within the knowledge of that party, or makes a material misrepresentation.

Fraud by a failure to disclose or concealment occurs when, (1) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, (2) the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and (3) the other party suffers injury as a

result of acting without knowledge of the undisclosed fact.

Fraud by a material misrepresentation occurs when, (1) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, (2) the misrepresentation is made with the intention that it should be acted on by the other party, and (3) the other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact or a promise of future performance made with an intent not to perform as promised.

The jury answered that Linbeck did not commit fraud against Facciolla. Facciolla contends that the jury's answer was against the great weight and preponderance of the evidence.

Facciolla reasons that because (1) Linbeck knew of Facciolla's ignorance about Linbeck's true role in the race track, (2) Linbeck intended Facciolla to take action, by way of giving testimony to the Racing Commission, and this testimony would not have been given with full knowledge of the facts, and (3) Facciolla suffered damages as a result of acting without knowledge of Linbeck's true role, Linbeck committed fraud against Facciolla and should be liable.

Facciolla asserts that "Linbeck's fraud liability flows from its refusal to fully inform the Racing Commission and Facciolla that it was not merely an 'investor,' but was expecting something more in return for its $100,000 'investment.'" Facciolla does not cite this Court to any evidence in the record that Linbeck refused to inform the Racing Commission of its role. Furthermore, Facciolla asserts that "Linbeck deliberately kept its true role as competitor from Facciolla, and Linbeck intended to induce Facciolla into taking action by concealing the true nature of its investment in the race track." Again, Facciolla failed to cite to any evidence in the record in support of this statement. Facciolla instead makes generalized statements about how SHRP and Linbeck must have felt the necessity to keep him happy until the Racing Commission hearings were completed because his testimony was crucial to getting the license. Facciolla asserts that Linbeck must have been involved in this charade to shield Facciolla from the deal between Linbeck and SHRP Ltd. because favorable testimony from Facciolla at the hearings was necessary in getting the license and, therefore, necessary to Linbeck's getting the construction contract. Facciolla claims that, had he known of Linbeck's involvement, his testimony to the Racing Commission would have been different in that he would have disclosed Linbeck's role.

In response, Linbeck argues that Facciolla was unknown to anyone at Linbeck until after the license was granted and even then, only one Linbeck representative knew of him and thought he was simply a "budget cruncher." Also, evidence demonstrates that no one at Linbeck ever made any representations to Facciolla. Facciolla admitted that he never spoke with anyone from Linbeck. Furthermore, Linbeck asserts that the information in the application to the Racing Commission was SHRP Ltd.'s representations and not Linbeck's, because Linbeck had no role in the preparation of the application. Linbeck also argues that it had no special relationship with Facciolla and, therefore, no duty to disclose any information to Facciolla.

Because Facciolla does not cite to evidence which speaks specifically to Linbeck's knowledge and actions which may constitute fraud, but rather cites only to the representations which other parties, aside from Linbeck, allegedly made to the Racing Commission and Facciolla, it is impossible for the jury verdict to be against the great weight and preponderance of the evidence in finding that Linbeck did not commit fraud.

### 3. Failure to Find Intentional or Wrongful Interference:

■ The trial court submitted the following question to the jury:

#### QUESTION 4

Did any of those named below intentionally interfere with the agreement, if any, that Facciolla would act as construction manager for the Sam Houston Race Park

after the grant of a license by the Texas Racing Commission?

Interference is intentional if (i) committed with the desire to interfere with the agreement or with the belief that interference is substantially certain to result, and (ii) it is not justified.

Interference with an agreement is justified if it results from the good faith exercise of a party's rights or if a party possesses an interest in the subject matter equal or superior to that of the other party.

The defendants have the burden of proving that the interference, if any, was justified.

The jury answered that Linbeck did not intentionally interfere with the agreement. Facciolla insists this answer is against the great weight and preponderance of the evidence because (1) it is undisputed that Facciolla had an agreement with SHRP Ltd. to be construction manager and (2) Linbeck intentionally wanted the job of contractor and, to get that job, made a $100,000.00 investment so that it would be looked upon as a potential contractor. Facciolla further argues that the verdict was manifestly unjust because Facciolla had staked his reputation and honesty on statements submitted in the application to the Racing Commission stating that he and his companies would serve as general contractor.

Once again, Linbeck points to the record to establish that it was unaware of Facciolla's agreed role as contractor with SHRP Ltd. Facciolla never points to any evidence that Linbeck intentionally interfered with the contract between Facciolla and SHRP Ltd. Therefore, the jury's verdict finding that Linbeck did not interfere with the contract was not against the great weight and preponderance of the evidence.

### 4. Error in Jury's Failure to Find that Linbeck Engaged in Civil Conspiracy:

■ The trial court submitted the question to the jury as to whether Linbeck engaged in a civil conspiracy as was described above. Facciolla claims that the jury's failure to answer the question in the affirmative

was against the great weight and preponderance of the evidence. In support of its argument, Facciolla claims that it was unlawful for Linbeck not to reveal the true nature of its investment, but Facciolla cites no authority for this position. Facciolla further claims that the application filed with the Racing Commission, which was signed under oath, was inaccurate, incomplete, and misleading since it did not contain information regarding the true nature of Linbeck's investment.

Linbeck again contends that the information in the application to the Racing Commission was compiled by and for SHRP Ltd. and that Linbeck had nothing to do with the application. Indeed, the application was signed by Robert Harter as president of SHRP, Inc., general partner of SHRP Ltd., who attested that the application was true and correct to the best of his knowledge. Neither Linbeck, nor its principals, signed the application.

Facciolla failed to present evidence which shows that the jury's finding that Linbeck did not engage in civil conspiracy is against the great weight and preponderance of the evidence.

The sixth, seventh, and eighth points of error are overruled.

### IV. Cross–Appellants Drouet and Pearson's Claims:

### A. Drouet and Pearson Argue that Facciolla's Claim Sounds Only in Contract:

■ Drouet and Pearson claim that Facciolla's fraud claim fails and should not have been submitted to the jury because the claim arises solely from the oral agreement and the damages sought by Facciolla were only the benefit of the bargain; hence, only a contract claim existed.

This Court has very recently addressed this specific issue in *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568 (Tex. App.—Texarkana 1997, no writ). After Williams' property was damaged during a move, she sued Bekins, the moving company, for breach of contract, negligence, and fraud, as well as for claims under the DTPA and Insurance Code. Williams claimed that Be-

kins misrepresented the type of services which they would provide in moving her property. Williams also claimed that Bekins breached the contract with her after she demanded payment for damages per the contract and Bekins refused. Williams recovered damages under both contract and other causes of actions. Bekins argued, as is argued in the present case, that only one cognizable cause of action was presented. This Court analyzed the problem as follows:

> The real question is whether, in addition to breaching its contract, Bekins also committed a tort. Breach of contract is by definition actionable, but the mere breach of contract is not a tort. In *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493–95 (Tex.1991), the court reviewed a plaintiff's action against a telephone company for its failure to publish a yellow pages advertisement in accordance with the contract between the parties. The Supreme Court held that where the claim arises solely from the contract and the damages are only for economic loss, the action is in contract and not in tort. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 495. Clearly, when a plaintiff seeks to recover only the expected benefit of his bargain, the action sounds exclusively in contract. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996).

> The rule enunciated in these cases, however, does not change the rule that a contract may create duties both in contract and in tort. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). The rule announced in *DeLanney* and *Ace Sign* did, however, provide some guidance for analysis. "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d at 495 (*quoting Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986)); *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d at 760.

> In this case, Williams' damages, except for deceptive trade practices and Insurance Code violations, arise solely from in-jury to the subject of the contract, i.e., her personal property and furniture. Although she claimed that Bekins acted negligently, the damages are only to her property, the subject of the contract, and they do not extend to any third party or property outside the contract. Williams also claimed mental anguish, but her anguish was caused by Bekins' treatment of her property-not by any direct or intentional tort against her personally. Under the authority of *DeLanney* and the authorities discussed therein, we conclude that Williams did not prove a cause of action for negligence separate and distinct from her contractual claims.

*Id.* at 577.

Facciolla contends that this analysis is inconsistent with the Texas Supreme Court's recent ruling in *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex.1997). We read *Formosa* as applicable only to fraudulent inducement claims and, therefore, inapplicable in this case. We believe that the *DeLanney* analysis is still an appropriate guide in assessing whether a tort action is available separately from contract claims.

Facciolla's fraud claim contained in his live pleading at trial asserted that the defendants made misrepresentations to the plaintiff which were false. The pleadings contend that Facciolla was specifically assured that he "would perform the construction management/general contractor work on the race track...." Also, Facciolla asserted that Drouet had specifically agreed that Facciolla would be employed by the track as construction manager and would serve as general contractor while the track was built. Drouet and Pearson argue that these are the same factual allegations and subject matter as were the basis of Facciolla's breach of contract claim. We agree.

At trial, Facciolla's testimony conformed to his pleadings. Facciolla testified that the misrepresentations made to him were that he would be employed as the construction manager for the track and that he was defrauded by this false promise. The only evidence of damages presented at trial was the expected

benefit of the bargain, that is, the amount Facciolla would have received had the agreement been performed as promised.

Facciolla's claim sounds only in contract. The facts which support both the fraud and contract claims are identical, and the losses sought for each claim, which consist of the expected benefit of the bargain, are also identical. Only one claim will lie, and that claim is a breach of contract claim.

Facciolla attempts to argue that, aside from the breach of the agreement, the misrepresentations caused him to testify falsely to the Racing Commission during the hearings on whether to grant SHRP Ltd. a racing license. However, Facciolla never asserted any damages which may have arisen from this allegedly falsely induced testimony. Without demonstrating damages which were proximately caused by the breach of duty, a tort action is not available. *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996). Cross-appellants' point of error one is sustained.

**B. Various Other Points Relating to Facciolla's Claim of Fraud:**

In points of error two through five, Drouet and Pearson allege the following:

*The trial court erred in instructing the jury that, on the facts presented, fraud includes a failure to disclose.

*The trial court erred in instructing the jury that measure of damages for fraud includes a claim for damages other than "reliance" damages.

*There is no evidence to support the jury's finding that Facciolla's alleged damages were caused by reliance on the fraud.

*The trial court erred in overruling Drouet's and Pearson's motions notwithstanding the verdict as to the fraud claim because the claim was inconsistent with the jury's finding that a contract existed.

All of these errors relate to the fraud question which, as discussed under cross-point one, should not have been submitted to the jury. These errors need not be addressed.

**C. Error Alleging that the Judgment of $700,000.00 for Actual Damages Violated the "One Satisfaction Rule:"**

In their last cross-point, Drouet and Pearson argue that Facciolla brought suit and presented evidence on only one injury, the failure of SHRP Ltd. to employ him as the construction manager. Drouet and Pearson argue that the trial court erroneously awarded separate damages for a single injury in violation of the one satisfaction rule.

**1. Rendered a Nullity due to Answer to Cross–Point One Above:**

Due to the disposition of cross-point one, this point of error need not be addressed because the judgment would be reformed to reflect only the damages awarded for breach of contract. However, even if this Court had found that the fraud and breach of contract claims do co-exist in this case, the damages must be reduced to reflect a single recovery of actual damages based upon the following analysis.

**2. Same Result Even if Cross–Point One Answer is Found to Be Incorrect:**

 Texas case law is well settled that when a single, indivisible injury occurs, the plaintiff may only recover once for that injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex.1991); *Bradshaw v. Baylor Univ.*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935). "Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when the defendants commit technically differing acts which result in a single injury." *Stewart Title*, 822 S.W.2d at 7.

The Houston Court of Appeals has addressed the one satisfaction rule, and the analysis employed is helpful in deciding the case at bar. *American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243 (Tex.App.—Houston [1st Dist.] 1988, writ denied). In *American Baler*, the plaintiff, SRS Systems, sued American Baler for fraud, breach of contract, negligent misrepresentation, and DTPA violations in relation to the purchase, installation, and use of a refuse baler system. The system never worked as promised from the first day of operation forward. *Id.* at 244. After many unsuccessful attempts had been made and a great deal of money spent in an attempt to fix the problems, SRS filed suit.

The jury awarded damages under all four causes of action. American Baler appealed, arguing that the damages for DTPA, fraud, and negligent misrepresentation arose out of the same acts and practices, and that the various awards for the different causes of actions resulted in a double recovery of actual damages. American Baler argued that SRS must elect a remedy. *Id.* at 245.

Although the appellee argued that the causes of action were based on different acts, the appellate court pointed out that the acts were all based on alleged misrepresentations surrounding the sale of the baler system. The court found that the appellee must elect between the actual damages awarded under the DTPA, fraud, and negligent misrepresentation causes of action.

■ Similar to *American Baler,* Drouet and Pearson argue that Facciolla sustained one injury, the loss of the benefit of the job of construction manager. Recovery for damages in both fraud and contract, they argue, would be allowing Facciolla a double recovery for a singular injury.

In response, Facciolla argues that the one satisfaction rule only operates to reduce a nonsettling party's liability for damages by allowing a credit against the party's adverse judgment for the amount of any settlements entered into by a co-tortfeasor. Although this statement is true, the one satisfaction rule also operates in situations where there are no settling co-tortfeasors and liability is adjudicated. *See Mayo v. John Hancock Mut. Life Ins. Co.,* 711 S.W.2d 5 (Tex.1986); *American Baler Co.,* 748 S.W.2d 243. Facciolla further argues that the rule does not operate to reduce the plaintiff's adjudicated damages. The one satisfaction rule does exactly that as long as the actual damages suffered arise out of only one injury, even when different acts are involved. *American Baler Co.,* 748 S.W.2d 243. Because Facciolla demonstrated only one injury, the one satisfaction rule prevents more than one recovery for that injury.

This cross-point is sustained.

## V. Cross–Points by Facciolla against Drouet and Pearson:

### A. Trial Court Erred by Not Submitting Negligent Misrepresentation Against Drouet and Pearson:

In the event that this Court sustained any of Drouet or Pearson's points, Facciolla asks this Court to consider these cross-points. Facciolla contends that the trial court erred by refusing to submit the negligent misrepresentation claim against Drouet and Pearson.

### 1. Standard of Review:

We will apply the same standard of review which we discussed earlier in connection with Facciolla's claim that the trial court improperly refused to submit certain claims as to Linbeck.

### 2. Analysis:

The elements of a negligent misrepresentation claim require that: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n,* 825 S.W.2d at 442.

■ Facciolla argues that Pearson and Drouet both had pecuniary interests in the race track at the time of the Racing Commission hearings, where it was represented that Facciolla would serve as construction manager. Facciolla also argues that Pearson and Drouet supplied false information to Facciolla and the Racing Commission by not disclosing the intent to use Linbeck, but instead representing that Facciolla would be the construction manager. Finally, Facciolla argues that Drouet and Pearson did not exercise reasonable care to communicate or correct the false information given to the Racing Commission or Facciolla.

To support the first element, Facciolla recounts Drouet and Pearson's various ownership stakes in SHRP Ltd. and the interest

the two had in getting a racing license. As for the second and third elements, Facciolla points to the testimony of Drouet regarding the Racing Commission application which states that, "JVF, Inc. [Facciolla] will be engaged to develop and construct the race track." Once again, this statement was made before Linbeck became involved in the contract. Facciolla also asserts that Drouet kept Facciolla in the dark about Linbeck's potential involvement. The following testimony demonstrates this.

Q: Why didn't you tell, in the letter dated April 15, 1991, why didn't you tell Mr. Facciolla when he was preparing for pre file testimony, that you had this agreement, that Sam Houston had this agreement with Linbeck for Linbeck to be the project manager, builder?

A [Drouet]: Because it was for two different things. It, it had nothing to do with the other. That agreement to agree was dealing with Linbeck becoming the builder of Sam Houston Race Park.

Mr. Facciolla was testifying as our consultant with respect to cost estimation. So there, there was no reason to tell Mr. Facciolla about Linbeck. There was absolutely no reason to do that.

However, Facciolla never points this Court to any misrepresentations made directly to him by Drouet or Pearson. The original agreement, dated June 13, 1990, between Facciolla and SHRP Ltd., acting through its general partner, SHRP, Inc., called for Facciolla to perform "construction management services to SHRP regarding its application to the Texas Racing Commission...." A later agreement, dated March 28, 1991, between Facciolla and SHRP Ltd. called for Facciolla to "perform certain construction management/construction expert services for Sam Houston Race Park in conjunction with SHRP's application to the Texas Racing Commission...." Neither of these agreements discuss Facciolla's role in the actual construction of the race park. It appears that there was never any written agreement between Facciolla and SHRP Ltd. for Facciolla to perform the actual construction. However, the jury found that an agreement did exist.

■ Although Facciolla argues that Drouet and Pearson made misrepresentations directly to him, he never supports these statements with evidence from the record. Nevertheless, he argues that there was still a duty to disclose Linbeck's involvement to him, that duty being that Drouet, Pearson, and Facciolla had developed a "special relationship" given their prior course of dealings which gave rise to a duty to tell or, in the alternative, a duty on the part of Drouet and Pearson to correct prior false or misleading information.

The case law which Facciolla cites to for support of the existence of a special relationship involves a very different fact situation from the one at bar. *See Lang v. Lee,* 777 S.W.2d 158 (Tex.App.—Dallas 1989, no writ). In *Lang,* the situation involved a widow who placed the proceeds of her husband's life insurance policy in the custody of other family members for investment and safekeeping. The widow was unsophisticated in financial matters, while the other family members were sophisticated businessmen. In addition, it was undisputed that a principal-agent relationship existed between the widow and the other family members. *Id.*

Facciolla does not assert a principal-agent relationship or any other special relationship which would lead to a duty to disclose. Facciolla never even asserts a duty to disclose by way of duty between those who are both parties to a contract. Facciolla does assert that Drouet and Pearson had a duty to correct any prior false or misleading statements. However, Facciolla never points this Court to actual misrepresentations made to him by Drouet and Pearson.

As to the last element of the negligent misrepresentation claim, Facciolla asserts that evidence at trial demonstrated damages in the range between $925,000.00 and $1.3 million. The evidence does support those damage figures.

Because there is no evidence of any misrepresentations made to Facciolla by Drouet and Pearson, the trial judge did not err in refusing to submit a negligent misrepresentation claim against Drouet and Pearson.

This cross-point is overruled.

**B. Trial Court Erred by Not Submitting Gross Negligence Arising Out of Negligent Misrepresentation Against Drouet and Pearson:**

Because Facciolla failed to develop enough evidence to bring a possible negligent misrepresentation claim against Drouet and Pearson, Facciolla also failed to bring enough evidence to show that Drouet and Pearson committed gross negligence arising out of a negligent misrepresentation. Facciolla presents basically the same evidence under this claim as he did under the cross-point above.

This cross-point is overruled.

## VI: CONCLUSION:

Because the fraud claim should not have been submitted to the jury, the trial court's judgment is reformed to eliminate the $300,-000.00 awarded against Drouet and Pearson for that claim.

The $400,000.00 breach of contract award and $550,000.99 exemplary damage award against SHRP, Inc. stand because those awards were not appealed.

As reformed, the judgment of the trial court is affirmed.