**AMERICAN BALER COMPANY and Miner Associates, Inc., Appellants,**

v.

**SRS SYSTEMS, INC., Appellee.**

**No. 01–86–00907–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 21, 1988.

Rehearing Denied March 24, 1988.

Michol O'Connor, Fred Ripen, Houston, for appellants.

Daniel O. Goforth, Houston, for appellee.

Before DUNN, WARREN and COHEN, JJ.

DUNN, Justice.

This is an appeal of a judgment based on jury findings, awarding damages against two defendants on four different causes of action: Deceptive Trade Practices Act (DTPA) violation, fraud, breach of contract, and negligent misrepresentation. All four causes of action relate to the sale and/or installation of a baler and conveyor in the fall of 1979 to appellee SRS Systems (SRS), a commercial trash hauling operation owned by Doug Looney. Appellant American Baler Company (Baler), is the manufacturer of the baler, and appellant Miner Associates, Inc. (Miner), is the sales representative who sold appellee SRS both the baler and the conveyor.

From the first day of operation, appellee had problems with the baling system. After many unsuccessful attempts by appellants to remedy the problems, appellee contends that he was forced to expend considerable money adding a shredder, which he was told was not necessary with this partic-

ular baler, and modifying the entire system, including the building in which it was housed. Furthermore, the landfill he purchased was losing money due to the less than predicted volume of garbage baled. Appellee further contends that because of the inability of the baler to process certain materials, even after modification, he had to cancel many of his accounts, and eventually was forced to sell his business to Browning Ferris, Inc.

Appellee brought suit against Baler, Miner, and Mayfran Conveyor Company (Mayfran), manufacturer of the conveyor, for damages sustained from the purchase and installation of the baling system (baler and conveyor). He pleaded DTPA violations, breach of contract, fraud, and negligent misrepresentation. Appellee's main allegation was that appellants misrepresented that the system could bale materials in appellee's waste stream. The damages sought from the three co-defendants totaled almost $10 million, (including treble damages under DTPA), plus attorney's fees. Mayfran failed to answer, and a default judgment was rendered against it.

The jury awarded SRS damages under all four causes of action against appellant Baler, and under all except breach of contract against appellant Miner, plus attorney's fees, but no punitive damages. The court rendered judgment for the total amount found by the jury under all causes of action, plus pre-judgment interest, as follows:

| | Miner | Baler |
|---|---|---|
| DTPA | 70,271 | 163,964 |
| Mandatory additional damages (2 × 1st $1,000) | 2,000 | 2,000 |
| Breach of Contract | 0 | 6,010 |
| Fraud | 35,136 | 122,973 |
| Negligent Misrepresentation | 35,135 | 40,991 |
| TOTAL | $142,543 | $335,938 |

Attorney's fees, jointly and severally      $70,000

In point of error four, appellants argue that the trial court erred in entering judgment against defendants for cumulative damages for inconsistent and concurrent causes of action arising out of the same acts and practices, because appellee was required to elect its remedy. Appellants had filed a request, which was denied, to require appellee to elect his remedy. Appellants argue that entering judgment upon the DTPA, fraud, and negligent misrepresentation causes of action resulted in double recovery of actual damages. Appellants do not challenge any possible double recovery under the DTPA and breach of contract causes of action, which were based on different acts. Appellants further argue that appellee pleaded these causes of action in the alternative, and thus, judgment must be rendered accordingly.

Appellee contends that the three causes of action were based on different acts. However, the special issues on the DTPA violations, fraud, and negligent misrepresentation were all based on alleged misrepresentations surrounding the sale of the baler system. Therefore, we find that they were all based on the same acts. The main question then becomes whether the DTPA allows double recovery for actual damages under inconsistent or concurrent causes of action based on the same acts.

The cumulative remedies section of the DTPA, section 17.43, was amended in 1979, and now reads:

> The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; *provided, however, that no recovery shall be permitted under both this subchapter and another law of both actual damages and penalties for the same act or practice.* (Added language underlined.)

Tex.Bus. & Com.Code Ann., sec. 17.43 (Vernon 1987).

Both parties cite several cases in support of their arguments regarding double recovery for actual damages under the DTPA. However, we find the supreme court decision, and its implications, in *Mayo v. John Hancock Mutual Life Ins. Co.*, 711 S.W.2d 5 (Tex.1986) to be controlling.

The *Mayo* court reversed a summary judgment that barred a DTPA action against an insurance company for deceptive trade practices in the sale of an insurance policy. The lower court had granted the summary judgment because the plaintiffs had already recovered actual and punitive damages from the insurance company for failing to pay within 30 days a claim the jury found valid, pursuant to article 21.21, section 16 of the Texas Insurance Code. Holding that the lower court misinterpreted the revised section 17.43, the *Mayo* court held that "the statute merely limits a plaintiff from recovering actual and punitive damages for a specific act under one law and then recovering actual and punitive damages for the very same act under the provisions of the DTPA." *Id.* at 6. Because the two claims were based on different acts, the court held that the second suit should be allowed. The *Mayo* court explained, however, that should plaintiffs prevail in the second trial, their judgment should be offset by the amount of actual damages recovered in the prior trial. *Id.* at 7. Therefore, while the *Mayo* court held that the DTPA allowed prosecution of two causes of action and double recovery for punitive damages based on different acts, it made clear that double recovery for any actual damages would not be allowed, even though caused by different acts. Therefore, double recovery for actual damages caused by the same acts would not be allowed by the DTPA. *See also Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985).

Appellee contends that the supreme court allowed double recovery for the inconsistent theories of DTPA violation and negligence in *Shell Oil Co. v. Chapman,* 682 S.W.2d 257 (Tex.1984). However, in *Shell,* a negligence and DTPA cause of action had been pleaded in the alternative against Shell and one of its dealers. Shell was found liable for negligence, and the dealer for DTPA violation. The supreme court refused to rule on the complaint by the dealer about the double recovery that would result if the negligence damages were awarded jointly and severally against both defendants. The court found that the dealer had not preserved error by failing to

object to the special issue on damages for negligence, which was based on the acts of both defendants. *Id.* at 259. The court did not hold that the DTPA allows double recovery under these inconsistent theories. In fact, the court remanded the case for consideration of contribution and indemnity between the co-defendants. *Id.* at 259–60.

■ We therefore find that the trial court erred in not requiring plaintiff to elect between the actual damages awarded under the DTPA, fraud, and negligent misrepresentation causes of action. Where the prevailing party fails to elect between damage awards under alternative causes of action, the court should utilize the findings affording the greater recovery and render judgment accordingly. *See Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361 (Tex.1987). Because the damages awarded by the jury for the DTPA violation were the greatest, and attorney's fees were recoverable only under the DTPA cause of action, we hold that appellee was entitled to recovery only under the DTPA cause of action.

Point of error four is sustained.

Point of error one challenges the legal and factual sufficiency of evidence to support all of the findings regarding violations of the DTPA, and the trial court's denial of appellants' motions for judgment n.o.v. and a new trial. In determining no evidence points, we are to consider the evidence and inferences that tend to support the findings, and we disregard all evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). In reviewing questions of factual insufficiency, we must consider and weigh all the evidence, both in support of, and contrary to the challenged finding. The finding must be upheld unless we find that the evidence is so weak as to be manifestly erroneous or unjust. *In re King's Estate,* 244 S.W.2d at 661. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimo-

ny. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We may not substitute our opinion merely because we might have reached a different conclusion. *Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 797 (1951).

All of the findings under the DTPA cause of action pertain to the alleged misrepresentations surrounding the sale of the baler system. The key issue, in our determination of whether the evidence supports a finding of misrepresentation, is how appellee described to appellants his business and the purpose for which he was interested in installing a baling system. Appellants contend that appellee told them he was in the process of converting his commercial trash hauling business, which presently handled 80% paper, into a paper recycling operation. Based on information provided by appellee, appellants sold him a 410 baler, which was described in the brochure as handling paper.

Appellee contends that he always described his business as a commercial trash hauling operation, and that he never intended to convert it solely into a paper recycling plant. Appellee further contends that the purpose of the baling systems was to bale trash so as to reduce the volume of trash taken to the landfill, which charged based on the cubic volume of trash dumped, and that appellants assured him that the particular baler sold could handle his current waste stream.

Appellants argue that certain documents entered into evidence by appellee were the equivalent of judicial admissions, or at least quasi-judicial admissions, by appellee, and conclusively prove that he told appellants that he was in, or planning to be in, the paper recycling business.

The particular documents describing appellee's business as a paper recycling operation are as follows:

1. A letter from appellee to the Texas Department of Health, to avoid licensing required for garbage operations.

2. Appellee's application to Gulf Coast Waste Disposal Authority for low cost financing, which could have been obtained regardless of how the business was described.

3. Appellee's corporate tax return to IRS claiming energy tax credit, which is available for equipment purchased for paper recycling, but not for garbage collection.

4. An article in *Waste Age Magazine* based on an interview with appellee. (Entered into evidence by appellants).

Appellants cite two supreme court cases to support their contention that these documents were judicial admissions. We find both are distinguishable. In *Stanolind Oil & Gas v. State*, 136 Tex. 5, 145 S.W.2d 569, (1940), a party was held bound by admissions in records he admitted to support his position, without any explanation or modification of their contents. In the instant case, appellee did not admit these documents as proof of his position on how he described the nature of his business, but more as a defensive measure, as even appellants suggest in their brief. Furthermore, unlike the party in *Stanolind*, appellee did give an explanation of the information contained in these documents. The credibility of these explanations was an issue for the jury.

In *Mendoza v. Fidelity & Guaranty Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980), the court set out the test for when quasi-judicial admissions are to be treated as judicial admissions. The first prong of the test is that the declaration was made during the course of judicial proceedings. *Id.* Documents admitted that show statements made to others prior to trial, which are inconsistent with statements alleged at trial, would not meet the first prong. Appellants also cite numerous appellate court cases regarding documentary evidence, all of which we find distinguishable from the facts of this case.

We therefore find that these documents do not establish, as a matter of law, the nature of business described to appellants by appellee. However, they must be given consideration in determining the factual sufficiency of the evidence supporting the jury findings of misrepresentation.

Appellants place all of their reliance in challenging the insufficiency of the evidence on the inconsistencies between Looney's testimony regarding how he described his business to appellants, and how he described his business to others who testified and in the various documents introduced into evidence, as well as on inconsistencies with allegations in his pleadings. However, at trial, Looney offered the explanation that his business did not fit totally in any one type of business (paper recycling, transfer station, trash hauling), but that, instead, he did a little of each. The fact that he described his business in the documents in the manner that best suited his purpose, while perhaps indicative, is not conclusive of how he described his business to appellants. Furthermore, it was after Miner's salesman accompanied Looney to Austin to meet with an attorney and representatives of the Health Department, that it was decided, for the purpose of the Health Department document, that Looney should describe his business as a paper recycling operation.

Appellants argue that the only evidence favoring the verdict was the testimony of Looney and one of his employees that Looney always intended to bale garbage. However, we find other uncontroverted testimony by Looney and two of his employees, as well as certain admissions, albeit reluctant, by Fred Miner and John Russell, sales manager for Baler, also to be supportive. This evidence includes the following: (1) Miner's salesman visited the landfill Looney was using prior to the sale, and viewed first-hand the exact composition of materials in appellee's waste stream; (2) Baler's technician, sent down to help with the initial start-up, complained to appellee's plant manager that the baler was not designed to bale the kinds of material for which they were using it; however, following a phone conversation, initiated by appellee's plant manager, between the technician and Baler's sales manager involved in the sale, no further complaints were made by the technician; (3) Looney was never notified by Miner or Baler in writing, or orally, that the baler could not bale the materials in his waste stream; and, in fact,

appellants continued trying to remedy the problems; (4) Baler was trying to move into the solid waste industry, in addition to paper recycling, and in a speech, Baler's sales manager referred to the 410 baler being used in transfer stations (not paper recycling operations) in Houston, referring to appellee, and in Chicago, where problems similar to appellee's were experienced; (5) the fact that Baler sold SRS this particular baler, knowing that it would not be used just to bale paper, is further supported by a memo from Baler's engineer (sent down to Houston to study the problems being experienced), which advised that "we need to back off to square one and analyze every component, since we are in an entire new ball game."

Appellants argue that the entire case hangs on Looney's credibility. While there are inconsistencies in Looney's testimony, and strong evidence contrary to the jury's verdict, there are also inconsistencies, or at least convenient lapses of memory, in the testimony of some of appellants' witnesses, along with evidence supporting the jury's verdict. After weighing all the evidence, we find that the evidence is not so weak as to render the findings on misrepresentations under the DTPA manifestly erroneous or unjust.

Point of error one is overruled.

Points of error six, seven, and eight further challenge the specific findings under the DTPA of (1) advertising goods with intent not to sell them as advertised, (2) misleading statements about the need for repair, and (3) taking advantage of appellee's lack of knowledge. While all of these specific acts are actionable under the DTPA, none of them are necessary to support the award of damages under the DTPA, which is supported by the other findings of misrepresentation of characteristics and benefits of equipment and services. Therefore, any error would be harmless.

Points of error six, seven, and eight are overruled.

Points of error two and three challenge the sufficiency of the evidence to support

the jury's findings regarding fraud and negligent misrepresentation. Having eliminated any recovery under these alternative theories, we need not address these points of error.

■ In point of error five, appellants argue that the trial court erred in refusing to give a special issue inquiring about the separate items of damages, as tendered by appellant Miner, instead of assigning a general damage issue to each cause of action.

The court submitted a separate damage issue for each cause of action on each defendant, similar to the following special issue on DTPA violation:

> Special Issue No. 7: What amount of money, if now paid in cash, do you find would fairly and reasonably compensate SRS for damages, if any, caused by any of the acts engaged in by Miner & Associates, which you have found to be a producing cause of damages to SRS in Special Issues 1 and 3 [DTPA violation], if you have so found?

Appellants argue that because the jury was not asked to specify what award was related to which conduct, they are unable to challenge any possible double recovery, as well as some alleged damages that were not recoverable (i.e., losses attributable to the purchase of the landfill.)

The trial court has wide discretion in the manner in which special issues are submitted, and "it shall not be objectionable that a question is general or includes a combination of elements or issues." Tex. R.Civ.P. 277. Furthermore, appellants were not harmed because we have eliminated the problem of possible double recovery in our disposition of point of error four. Also, while the damages attributable to landfill losses might not have been recoverable, the other alleged damages, not challenged by appellants, are sufficient to support the amount of damages awarded.

In their reply brief, appellants argue that the trial court erred in submitting issues on damages without any limiting instructions regarding what the jury was to consider in arriving at the damage finding, or without defining or itemizing the elements to be considered, citing *Jackson v. Fontaine's*

*Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 864 (Tex.App.—Amarillo 1983, no writ) (both decisions finding similar damage issues fatally defective in the absence of the proper legal measure of damages). While appellants raise this in their reply brief as an additional argument under point of error five challenging the submission of a general damage issue, this would appear to be a new point of error, for which appellants were required to seek leave of this Court to raise. Tex.App. 1st Dist. R. 1:74.

■ Furthermore, appellants cannot complain on appeal of the lack of an instruction on the measure of damages, if they failed to object and distinctly point out this ground for objection, and tender a substantially correct instruction in accordance with Tex.R.Civ.P. 279. *Osoba v. Bassichis*, 679 S.W.2d 119, 122 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334–35 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

While appellants made numerous objections to the issues on damages (as well as to all 30 special issues submitted), they did not "point out distinctly" the lack of a measure of damages, in compliance with Tex.R.Civ.P. 274. *See Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex.1987). Appellant Miner did request and tender a list of all damages alleged by appellee to be added to each damage issue; however, this list was not intended to provide, nor did it provide, the proper measure of damages for each cause of action.

Point of error five is overruled.

In point of error nine, appellants challenge the trial court's awarding of attorney's fees based on three grounds: (1) failure to segregate the fees among the four causes of action, two of which do not allow recovery of attorney's fees (fraud and negligent misrepresentation); (2) failure to segregate fees among the co-defendants because a third co-defendant (Mayfran) had a default judgment rendered against it, absent any award of requested attorney fees; (3) award of the attorney's fees jointly and

severally; and (4) legal and factual insufficiency of the evidence to support the award.

Appellants' only objection at trial to the special issue on attorney's fees was that there was no evidence to support submission of appellate legal services (which the jury declined to award anyway). Appellants have, therefore, waived their right to complain about failure to segregate the fees by not objecting to the broad attorney's fees issue. *Home Savings Ass'n. v. Guerra*, 733 S.W.2d 134, 137 (Tex.1987). The *Home Savings* ruling would bar appeal based on the failure to segregate fees, as well as the award of attorney's fees, jointly and severally. *Id.* Furthermore, because of our holding on point of error four, only the DTPA and breach of contract causes of action remain, both of which allow attorney's fees.

█ We agree with appellant's fourth ground that the evidence is insufficient to support an award of $70,000, because the only evidence offered was testimony by appellee's attorney, Daniel Goforth, based on a computer print-out showing charges of $51,507 attributed to this suit.

Point of error nine is sustained in regards to the insufficiency of evidence to support the award of $70,000 for attorney's fees.

█ In point of error 10, appellants challenge the court's awarding of prejudgment interest because there were no pleadings for interest. Appellee argues that he was entitled to prejudgment interest as a matter of law, relying on *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985), which recognized recovery of prejudgment interest in tort. However, in a subsequent decision by the supreme court, the court limited its holding in *Cavnar. Benavidez v. Isles Const. Co.*, 726 S.W.2d 23 (Tex.1987). The *Benavidez* court explained that in *Cavnar* "we do not dispense with the pleading requirement for pre-judgment interest sought at common law, nor do we suspend Rule 301 which requires the judgment to conform to the pleadings." *Id.* at 25. The actual damages recoverable under the DTPA have been construed to mean those damages that are recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). The *Benavidez* court recognized that statutory or contractual prejudgment interest may be predicated on a prayer for general relief. *Id.* at 25. However, neither the DTPA nor any contract before this Court specifically provides for prejudgment interest. Nor is this a suit on a written contract ascertaining a sum payable at a certain date to bring it under Tex.Rev.Civ. Stat.Ann. art. 5069–1.03 (Vernon 1987). *See Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 116–17 (Tex. 1978). Appellee contends that by signing a stipulation (signed by all parties), stating from when prejudgment interest, if any, would accrue, appellants waived any objection to prejudgment interest. Appellants argue that the very reason the term "if any" was placed in the stipulation, was to prevent the stipulation from being considered an agreement to pay prejudgment interest. We do not find that by signing this stipulation, appellants waived any objection to the awarding of prejudgment interest.

Point of error 10 is sustained.

Having sustained appellant's points of error four, nine (in part), and ten, we modify the judgment of the trial court accordingly, and (1) reduce the total damages awarded against appellant Miner to $72,271 (DTPA) and against appellant Baler to $171,974 ($165,964 for DTPA and $6,010 for breach of contract that was not challenged), (2) reduce the award of attorney's fees, jointly and severally, to $51,507, and (3) reverse and render that appellants take nothing in the way of prejudgment interest. The judgment of the trial court as modified is affirmed.

COHEN, Justice, concurring upon Denial of Motion for Rehearing.

Upon original submission, we sustained appellant's challenge to the trial court's award of pre-judgment interest. On the

authority of *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23 (Tex.1987), we held that appellee could not recover pre-judgment interest because it did not plead for it. *Benavidez* held that a mere prayer for general relief, which notifies of almost nothing, will support an award of statutory or contractual pre-judgment interest, but that a specific prayer is required to support an award of common law pre-judgment interest. *Benavidez*, 726 S.W.2d at 25.

But for *Benavidez*, I would uphold the trial court's award of common law pre-judgment interest. The purpose of pleadings is to give the defendant fair notice of the claim. Tex.R.Civ.P. 45. Even without notice, defendants should expect that plaintiffs will seek pre-judgment interest on every possible basis, including at common law. Moreover, notice that the plaintiff seeks pre-judgment interest will rarely affect the defense of the case.

> The recovery of pre-judgment interest does not require any evidentiary proof at trial. It simply requires a mechanical application of the *Cavnar* formula by the trial court after the verdict has been returned. This being the case, Benavidez' trial amendment could not have caused any surprise or prejudice to Isles Construction Company.

*Benavidez*, 726 S.W.2d at 26. Thus, notice after the verdict was held sufficient in *Benavidez*.

I would prefer to hold that the failure to plead for pre-judgment interest did not harm appellants for the same reasons that the post-trial amendment in *Benavidez* caused no harm. This conclusion seems especially appropriate here because the parties stipulated the dates that pre-judgment interest, if recoverable, would begin. In similar circumstances, we have upheld a take-nothing judgment based on unpleaded contributory negligence where the absence of pleadings did not harm the plaintiff. *Compare Turner v. Lone Star Industries, Inc.*, 733 S.W.2d 242, 244 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

If notice to the defendant after the jury has reached its verdict is sufficient, as it was in *Benavidez*, I see no reason for requiring any notice at all, unless there was harm.

Requiring a specific pleading for only one form of pre-judgment interest sets an unnecessary trap for the plaintiff without giving any valuable protection to the normally situated defendant. Moreover, while Tex.R.Civ.P. 301 requires that a judgment conform to the pleadings, that rule should not be mechanically applied to reverse judgments in the absence of harm. See Tex.R.App.P. 81(a) authorizing reversal only for errors that probably caused the rendition of an improper judgment.

Awarding common-law pre-judgment interest without pleadings was not "such a denial of rights of the appellant(s) as was reasonably calculated to cause and probably did cause the rendition of an improper judgment" Tex.R.App.P. 81(a). Instead, the record reflects that no harmful denial of rights occurred. Nevertheless, I am bound by *Benavidez* to join the majority in sustaining point of error 10.