**Opinion issued July 9, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-22-00967-CV**

_____

**CYNTHIA WESTHEIMER, Appellant/Cross-Appellee**

**V.**

**HEIDI ZIEMER AND ALL HEART HORSE FARM HOLDINGS, LLC,**
**Appellees/Cross-Appellants**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 93883-CV**

---

# O P I N I O N

Cynthia Westheimer sued Heidi Ziemer and All Heart Horse Farm Holdings, LLC for breach of a horse-boarding contract and deceptive trade practices. Ziemer and All Heart Horse Farm counterclaimed for quantum meruit and breach of two other contracts, one relating to a tack and feed store joint venture and another relating

to an investment in a sport horse syndicate. The parties tried these claims and counterclaims to a jury, which rejected Westheimer's claims altogether and found for All Heart Horse Farm solely with respect to the sport horse syndicate contract claim. The jury awarded All Heart Horse Farm $2,120 in damages and $165,000 in attorney's fees. After post-trial motions, the trial court entered a judgment awarding the $2,120 in damages but reducing the award of attorney's fees to just $15,000.

Both sides appeal. Westheimer contends the evidence is insufficient to support the trial court's award of fees on the sport horse syndicate contract claim. In several issues, Ziemer and All Heart Horse Farm contend that the trial court erred by reducing the jury's fee award from $165,000 to $15,000. In addition, Ziemer and All Heart Horse Farm contend the trial court erred in not finding that Westheimer brought her deceptive trade practices claim in bad faith or with the intent to harass and in not awarding them additional attorney's fees and costs on this ground.

We reverse the trial court's judgment as to attorney's fees and affirm the remainder of the trial court's judgment. We remand this cause to the trial court for a new trial limited to the determination of reasonable and necessary attorney's fees.

## BACKGROUND

After a four-day trial, in which more than two hundred exhibits were introduced into evidence, the trial court submitted the case to the jury. The jury charge included fifteen questions. In a unanimous verdict, the jury rejected

2

Westheimer's contract and DTPA claims and all but one of the counterclaims. The jury found that Westheimer breached the sports horse syndicate contract and awarded All Heart Horse Farm $2,120 in damages for Westheimer's breach of this contract. The jury also awarded All Heart Horse Farm $165,000 in attorney's fees. The fee question asked the jury what amount was reasonable and necessary for representation through trial without segregating fees based on cause of action.

No one had objected to the way in which the trial court submitted fees.

After the jury returned its verdict, Westheimer moved to disregard the jury's award of attorney's fees on two grounds. First, Westheimer argued that All Heart Horse Farm could not recover its fees because it had failed to segregate recoverable fees from unrecoverable ones, noting that it had prevailed on just one of its multiple counterclaims and could not recover fees incurred defending against her claims. Second, Westheimer argued, segregation aside, that the evidence of fees is legally insufficient to sustain a fee award in any amount because the attorney testimony as to fees was conclusory and the attorney billing records were entirely redacted.

Ziemer and All Heart Horse Farm moved for the entry of judgment on the jury's verdict. With respect to attorney's fees, they argued no segregation was necessary because the legal services for recoverable and unrecoverable claims were so intertwined as to be indistinguishable. They further argued that to the extent segregation was necessary, their attorney had offered legally sufficient testimony on

3

this issue. Finally, based on the jury's rejection of Westheimer's DTPA claim, Ziemer and All Heart Horse Farm maintained the trial court should find this claim was groundless or brought in bad faith or for the purpose of harassment, which entitled them to fees they incurred defending against Westheimer's DTPA claim.

The trial court entered a judgment against Westheimer for $2,120 in actual damages and $15,000 in attorney's fees. The judgment also recited that Westheimer's DTPA claim was groundless or brought in bad faith or for the purpose of harassment. Both sides then filed motions to modify the court's judgment.

Westheimer moved to modify the judgment to delete the DTPA finding. She argued that Ziemer and All Heart Horse Farm had not pled groundlessness, bad faith, or harassment. Likewise, she argued, the parties did not try these issues to the jury.

Ziemer and All Heart Horse Farm moved to modify the judgment to award the $165,000 in attorney's fees awarded by the jury, asserting the trial court abused its discretion in awarding just $15,000. They argued the evidence was sufficient to support the jury's award and reiterated their arguments that segregation was not required in this case, sufficient evidence was provided as to segregation in any event, and the DTPA authorized recovery of fees incurred in defense of that claim. In the alternative, Ziemer and All Heart Horse Farm requested a new trial as to fees.

The trial court entered an amended final judgment against Westheimer for $2,120 in actual damages and $15,000 in attorney's fees. The trial court's amended

judgment omitted the original judgment's finding that Westheimer's DTPA claim was groundless, brought in bad faith, or brought for the purpose of harassment.

Westheimer then filed a perfunctory motion for new trial, asserting there was legally and factually insufficient evidence to support the $15,000 award of attorney's fees. Ziemer and All Heart Horse Farm did not file any further post-trial motions.

Both sides then appealed from the trial court's amended final judgment.

## DISCUSSION

### I. Segregation of Recoverable Attorney's Fees

Westheimer argues that the trial court erred in awarding $15,000 in attorney's fees to Ziemer and All Heart Horse Farm because they failed to segregate recoverable fees from unrecoverable ones. But Westheimer waived this issue.

When attorney's fees are submitted to a jury, the issue of fee segregation is likewise submitted to the jury. *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 801 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Hence, a party who insists on fee segregation waives any segregation-related error if the trial court submits a broad-form fee question and the party does not object that the question does not allow for segregation between recoverable and unrecoverable attorney's fees. *Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *C.M. Asfahl Agency*, 135 S.W.3d at 801; *Am. Baler Co. v. SRS Sys.*, 748 S.W.2d 243, 250 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *see also Dernick Res. v. Wilstein*, 471 S.W.3d 468, 492

(Tex. App.—Houston [1st Dist.] 2015, pet. denied) (indicating failure to segregate recoverable from unrecoverable fees is likewise waived in context of bench trial if complaining party does not object to failure to segregate fees in trial court).

Here, the trial court submitted a broad-form question on attorney's fees, asking the jury to find what amount in dollars and cents All Heart Horse Farm had incurred "[f]or representation through and the completion of the proceedings in the trial court." The question advised the jury that it should consider "[t]he amount involved and the results obtained" as one factor in determining the amount of reasonable and necessary attorney's fees, but the question did not provide blanks allowing the jury to make awards for discrete categories of fees, such as those incurred with respect to a particular claim or defense. Consequently, the question and the jury's finding neither allowed the trial court nor allows this court to distinguish recoverable attorney's fees from unrecoverable ones in light of the rest of the verdict. Westheimer did not object to the broad-form submission of attorney's fees to the jury or otherwise request that the issue of fees be submitted to the jury in a way that would have allowed the jury to make discrete awards of fees incurred with respect to individual claims or counterclaims or in defending against individual claims or counterclaims. Thus, on appeal, Westheimer cannot challenge the attorney's fees awarded in the trial court's judgment based on a failure to segregate recoverable fees from unrecoverable ones. *See Solis*, 951 S.W.2d at 389.

We overrule Westheimer's complaint as to the failure to segregate fees.

## II.     Evidentiary-Sufficiency Issues as to Attorney's Fees

Setting aside her complaint about the failure to segregate recoverable fees, Westheimer argues the trial court erred in awarding $15,000 in attorney's fees because the evidence is legally or factually insufficient to support an award in this or any other amount, including the $165,000 awarded by the jury in its verdict.

In contrast, Ziemer and All Heart Horse Farm argue that the trial court erred in disregarding the jury's finding that the latter incurred $165,000 in reasonable and necessary attorney's fees because some evidence supports a fee award in this amount. At the very least, Ziemer and All Heart Horse argue, the evidence is both legally and factually sufficient to support the trial court's award of $15,000.

### A.     Standard of review

Here, the trial court disregarded the jury's finding on the amount of attorney's fees, implicitly finding the evidence did not support the jury's $165,000 fee award and instead finding the evidence supported an award of fees in the lesser amount of $15,000. *See Solis*, 951 S.W.2d at 389–90 (holding that when fee segregation is waived through failure to object to broad-form question on fees, trial court may only disregard jury finding if it is unsupported by evidence or immaterial); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 506 (Tex. 2018) (explaining that jury finding is immaterial when question at issue should not have been submitted to jury

or was properly submitted to jury but was rendered irrelevant by other jury findings and noting that defective question does not render jury's answer immaterial).

Given the issues raised by the parties, our standard of review is twofold. We must first review the trial court's decision to disregard the jury's finding for legal sufficiency because the trial court can disregard a jury finding only if no evidence supports it. *See Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc) (stating trial court should disregard jury finding when evidence is legally insufficient to support it or because legal rule bars recovery); *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 470 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (indicating motion to disregard jury finding challenges legal sufficiency); TEX. R. CIV. P. 301 (providing that trial court may upon motion and notice "disregard any jury finding on a question that has no support in the evidence"). When, as here, a party challenges the legal sufficiency of the evidence to support an adverse jury finding on which it did not bear the burden of proof at trial, the party must show that no evidence supports the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011).

Assuming the trial court properly disregarded the jury's finding as to the amount of attorney's fees for lack of evidence, we then review the court's determination as to the amount of reasonable and necessary attorney's fees for an abuse of discretion. *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st

8

Dist.] 2006, no pet.). While evidentiary-sufficiency issues are not independent grounds of review under the abuse-of-discretion standard, evidentiary sufficiency remains relevant in assessing whether the trial court abused its discretion. *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 486 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). In general, we ask whether the trial court had enough evidence to exercise its discretion and, if so, whether it erred in applying its discretion. *See id.*; *see also The Iola Barker v. Hurst*, 632 S.W.3d 175, 186 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (noting that reasonableness of attorney's fees is question of fact to be decided by factfinder and acts as limit on amount of recoverable fees).

### B. Applicable law

In *Rohrmoos Venture v. UTSW DVA Healthcare*, the Supreme Court of Texas clarified Texas law regarding the evidence a party must introduce to make a legally sufficient showing as to attorney's fees. 578 S.W.3d 469, 486–506 (Tex. 2019).

In *Rohrmoos Venture*, the plaintiff sued for breach of a commercial real-estate lease and breach of the implied warranty of suitability. *Id.* at 475–76. The parties tried the case, including the issue of reasonable and necessary attorney's fees, to a jury. *Id.* at 476. In support of fees, the plaintiff's attorney testified that he had been a litigator for 20 years, his billable rate was $430 per hour, he had litigated cases of this type before, and this case required somewhere between 750 and 1,000 hours. *Id.* at 476, 503. Multiplying this range of hours by his billable rate, the attorney arrived

at a reasonable and necessary fee in the range of $322,500 to $400,000. *Id.* at 476. However, the attorney further testified that for a variety of reasons, largely attributable to the other side, his actual fees in this case were much closer to $800,000. *Id.* at 476, 503. He cited several circumstances in justification of this significant increase in fees, including voluminous document production, review of millions of e-mails and hundreds of thousands of other documents, conduct of more than 40 depositions, designation of multiple experts, and significant motion practice, including several motions to compel and a lengthy summary-judgment motion necessitating a similar response. *Id.* at 476, 503–04. But the attorney did not specify how much time was spent on these tasks, and it was clear from his testimony that these tasks were illustrative and did not encompass all the work he performed. *Id.* at 476. Nor did the attorney introduce billing records into evidence. *Id.* at 486.

In its verdict, the jury found the plaintiff incurred $800,000 in reasonable and necessary fees and would incur other specific amounts on appeal, and the trial court's judgment awarded the plaintiff the fees determined by the jury. *Id.* at 476–77.

When the case reached the supreme court, one issue on appeal was whether the evidence of the plaintiff's attorney's fees was legally sufficient. *Id.* at 486. The court held the evidence was legally insufficient and reversed the fee award, concluding that the attorney's testimony was too general. *Id.* at 505–06. Without further detail about the work performed, how much time was spent on discrete tasks,

and how the total figure of $800,000 was calculated, the attorney's testimony lacked the substance necessary to justify the amount of fees awarded. *See id.* (reversing the judgment as to fee award and remanding to trial court for new trial on fees).

The supreme court explained that Texas generally applies what is known as the lodestar method, which incorporates the well-known *Arthur Andersen* factors. *Id.* at 497–501 (explaining that lodestar method of calculating attorney's fees incorporates into base calculation most considerations previously set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997), and specifying that lodestar method of calculating attorney's fees should be used whenever fees may be calculated by multiplying reasonable hours by reasonable rates). Under the lodestar method, a party seeking fees must first adduce sufficient evidence of the reasonable hours worked by the attorneys and their reasonable hourly rates. *Id.* at 498, 501. The multiplication of these figures—hours x rates—results in a base amount of attorney's fees that is presumptively reasonable. *Id.* at 498–99, 501.

But general, conclusory testimony lacking real substance cannot support a fee award. *Id.* at 501. So, for example, testimony estimating the collective number of hours worked by attorneys, attributing these hours to several general categories of tasks, and swearing these tasks were reasonable and necessary is not enough. *See id.* at 494–95 (discussing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012)). Likewise insufficient is testimony that does no more than specify the number of

11

hours worked by attorneys and their respective billing rates accompanied by general representations that their time was occupied with extensive discovery, several pretrial hearings, multiple summary-judgment motions, and trial. *See id.* at 495–96 (discussing *Long v. Griffin*, 442 S.W.3d 253 (Tex. 2014) (per curiam)). In part, such generalities are legally insufficient to support a fee award because they effectively amount to the subjective say-so of attorneys, which cannot be meaningfully evaluated by a factfinder or reviewed by an appellate court. *See id.* at 496, 498 (characterizing lodestar method as "focused and objective analysis" of reasonableness and necessity of attorney's fees that is "readily administrable," limits discretion of trial judges and other factfinders, and allows real judicial review).

Thus, to be legally sufficient, testimony about the reasonable hours worked by attorneys and their reasonable rates must, at a minimum, include evidence of:

(1) the particular services performed;

(2) who performed these services;

(3) approximately when they performed these services;

(4) the reasonable amount of time required to perform these services; and

(5) the reasonable hourly rate for each person who performed them.

*Id.* at 498, 502. Fees resulting from excessive, redundant, or otherwise unneeded services should be taken into account and excluded. *Id.* at 498–99. Rates should reflect the legal market in the community as well as a lawyer's experience, skill, and

reputation. *Id.* at 499. If this evidence is introduced, then the resulting lodestar calculation presumptively is the amount of reasonable and necessary fees. *Id.*

The parties may rebut this presumption with additional evidence, effectively adjusting the lodestar calculation up or down based on relevant considerations. *Id.* at 500. But because the lodestar calculation usually already accounts for most of the *Arthur Andersen* considerations—including the time and labor necessary, novelty and difficulty of questions at issue, skill needed to perform the legal services, fee customarily charged for like services in the area, amount at stake, abilities of the attorneys and their reputations, whether the fee is fixed or contingent, uncertainty of collection before the work is done, and the results obtained—an enhancement or reduction of the fee ordinarily cannot be premised on these considerations. *Id.* at 500–01. Instead, an enhancement or reduction in the lodestar amount must be based on specific evidence showing that a higher or lower amount of attorney's fees is necessary to effect an award of reasonable and necessary fees. *Id.* at 501–02. As a result, such an upward or downward adjustment will rarely be warranted. *See id.* at 502 (agreeing that presumption that lodestar calculation results in reasonable and necessary amount of attorney's fees may be overcome in "rare circumstances").

In clarifying the standard for legal sufficiency as to attorney's fees, the supreme court held that contemporaneous billing records are not required. *Id.* at 502. Nonetheless, the court "strongly encouraged" their use as evidence, reasoning that

13

in all but the simplest cases, an attorney would likely have to refer to these records or other documentation in order to provide legally sufficient testimony about the reasonableness and necessity of his fees. *Id.* Moreover, billing records may provide additional information that allows the attorney to testify more succinctly. *See id.* at 502–03, 505 (indicating that billing records allow opposing counsel to identify areas of dispute and thereby facilitate agreement as to fees or at least narrow or focus disagreements about fees and observing that attorneys "should not have to take the stand for days and testify to every detail of a three-year-long case" to justify fees).

In *Rohrmoos Venture*, the court concluded the attorney's testimony, which was not accompanied by billing records, was too general to serve as legally sufficient evidence of the reasonableness and necessity of the more than $800,000 in fees found by the jury and awarded by the trial court. *Id.* at 486, 505; *see also Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 710 (Tex. 2019) (per curiam) (holding conclusory affidavits reciting only generalities did not satisfy standard articulated in *Rohrmoos Venture* and therefore were legally insufficient to support fees imposed as sanctions); *Patriot Contracting v. Shelter Prods.*, 650 S.W.3d 627, 657–58 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (reiterating legal-sufficiency standard stated in *Rohrmoos Venture* and restating that generalities as to tasks performed is not enough and there must be evidence about time spent on specific tasks).

### C.     Analysis

Joseph M. Heard, lead counsel for Ziemer and All Heart Horse Farm, testified about the attorney's fees his clients incurred through the conduct of trial in this case. His testimony was brief, occupying less than eight pages of the court reporter's trial transcript. He did not testify about appellate fees, and the charge did not submit a question to the jury about reasonable and necessary fees in the event of an appeal.

Heard testified that he has been a lawyer since 1984 and is licensed to practice in Texas and at least two federal district courts in Texas. He also is licensed to practice in the United States Supreme Court, and recently handled an appeal there.

Heard testified that his clients had at least two other lawyers before he and his firm were hired to represent them: Matthew Edquist and Jonathan Andresen. They respectively billed $2,790 and $5,285 in attorney's fees. But Heard did not explain what services Edquist and Andresen performed, how many hours they spent performing these services, or what rate they billed for the performance of them, apart from stating that he had "reviewed all the attorney's fees associated with the other lawyers." Finally, Heard did identify one additional prior lawyer by name, Terry Fitzgerald, but Heard stated that his clients were not seeking Fitzgerald's fees.

Heard testified that he is "familiar with the reasonable attorney's fees in and around Brazoria County" by virtue of his practice in that county and in Houston. He

15

has "tried two cases" in the same courtroom where this case was tried, one in 1998 and another in the early 2000s. He has another trial set to be tried in this court too.

Heard "spent a total of 285 hours" in this case at "an average billable rate" of "$186 an hour." Three associates also worked on the case. Heard explained that two of them had left the firm during the course of the litigation. The associates were Zack Robichaux, who worked "107 hours at an average billable rate of $173," Jeffrey Heyman, who worked "262 hours with an average billable rate of $168," and Braxton Evans, who worked "123 hours at $175 an hour." In addition, two legal assistants worked on the case: Cindy Hernandez, who worked "114 hours at a billable rate of $107," and Samantha Thompson, who worked "47 hours at $110."

Heard testified that the total bill for him and his firm's services was $157,094. He acknowledged that this is "a lot of money" and that "it's a large number" but explained that "this has been a hard-fought battle" and the amount "is what it is." Taking into account the prior work of Edquist and Andresen, the total amount of reasonable and necessary attorney's fees incurred was approximately $165,000.

Regarding the specific services performed by him and his firm, Heard & Medack, P.C., Heard did not offer much in the way of detail. Heard testified that:

- when hired, he had an "initial meeting" with Ziemer "at the farm";
- he prepared for and attended five "lengthy depositions";

16

- his firm "drafted additional answers in discovery," "supplemented discovery on at least three different occasions," and produced "6,309 documents";

- his firm "ended up drafting two motions to compel and attended hearings";

- he prepared for trial, working "a lot" the week beforehand and "all last weekend"; and

- he attended five days of trial proceedings, including jury selection.

In addition, Heard introduced into evidence about 115 pages of his firm's billing records. These records identify the person performing a service by his or her initials, specify the time spent by the person performing the service, and state the amount charged for performing a given service. However, the billing records redact the services performed in their entirety. That is, the redacted records do not contain any description of the work performed whatsoever, not even in general terms.

On cross-examination, opposing counsel asked Heard a single question: whether Heard had tried to segregate attorney's fees incurred defending against Westheimer's contract claim from those incurred prosecuting his own clients' contract claims. Heard said he did not attempt to do so "because they were so intertwined." However, Heard further testified that he estimated about "70 percent" of his total fees were incurred defending against Westheimer's contract claim.

On appeal, Heard argues this evidence is legally sufficient to support the jury's finding of $165,000 in fees—the exact total to which he testified—and that the trial court therefore erred in disregarding the jury's finding as to attorney's fees.

We disagree. Heard's testimony and his firm's billing records do not meet *Rohrmoos Venture*'s standard for legally sufficient evidence of attorney's fees.

Like the legally insufficient testimony about fees in *Rohrmoos Venture*, Heard's testimony consists of mere generalities, which cannot support a fee award. *See Rohrmoos Venture*, 578 S.W.3d at 501 ("General, conclusory testimony devoid of any real substance will not support a fee award."). While Heard identified several broad categories of work performed—written discovery, document production, depositions, motion practice, trial preparation, and trial—either by him or someone else at his firm, it is impossible to discern who spent how much time performing these broad categories of work, let alone discern the discrete tasks subsumed within these broad categories. *See id.* at 494–96 (reiterating that introduction of aggregate number of hours worked accompanied by no more than general descriptions of broad categories of activity lacks the specificity required to be legally sufficient). Because Heard's testimony lacks these specifics, his testimony is legally insufficient. *See id.* at 505 (advising that absent "detail about the work done, how much time was spent on the tasks," testimony lacks substance needed to uphold award). At bottom, Heard's testimony about attorney's fees is indistinguishable from the testimony that the court found legally insufficient in *Rohrmoos Venture*. *See id.* at 503–05.

This case differs from *Rohrmoos Venture* in one potentially notable way: Heard introduced his firm's billing records into evidence. In this particular case,

however, the billing records ultimately make no difference because the description of the work performed has been redacted in its entirety. In consequence, the records fail to fill the gaps in Heard's testimony and are likewise legally insufficient, whether considered on their own terms or in combination with Heard's testimony on fees. *See Isomeric Indus. v. Triple Crown Res.*, No. 01-22-00768-CV, 2023 WL 6884172, at *4 (Tex. App.—Houston [1st Dist.] Oct. 19, 2023, no pet.) (mem. op.) (indicating that billing records are insufficient evidence of fees when entire description of work performed is redacted but concluding records before court, which were only partly redacted to prevent disclosure of information ostensibly protected by attorney–client privilege, provided enough detail about specific tasks to serve as evidence of fees); *Brant Oilfield Mgmt. & Sales v. Mountwest, Inc.*, No. 14-15-00240-CV, 2016 WL 3574669, at *4–5 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.) (holding billing records redacted to omit narrative descriptions of work performed in their entirety did not constitute legally sufficient evidence of fees). When, as here, billing records are so heavily redacted that the specific tasks performed by the attorneys or other legal professionals are indiscernible, they do not provide all the information required to constitute legally sufficient evidence of reasonable and necessary attorney's fees. *See Rohrmoos Venture*, 578 S.W.3d at 495 (emphasizing that "itemizing specific tasks, the time required for those tasks" is part of required showing necessary to introduce legally sufficient evidence of fees);

19

*Person v. MC-Simpsonville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332, at *8–9 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.) (recognizing that attorney time records may require some redaction to preserve attorney–client privilege but holding majority of records before court were so redacted that they lacked specificity *Rohrmoos Venture* requires to prove fees); *cf. Tite Water Energy v. Wild Willy's Welding*, No. 01-22-00158-CV, 2023 WL 5615816, at *11–12 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, pet. denied) (mem. op.) (concluding that invoices, many of which were extensively redacted, together with attorney's testimony about fees provided sufficient fee evidence); *Calleja-Ahedo v. Compass Bank*, No. 01-15-00210-CV, 2020 WL 3820420, at *12 (Tex. App.—Houston [1st Dist.] July 7, 2020, no pet.) (mem. op.) (holding that even though billing records were redacted in part, redactions were "not so significant that a court cannot determine what tasks were being performed" and thus satisfied *Rohrmoos Venture*'s requirement that "particular services performed" be proved).

The preceding deficiencies in the fee evidence are enough, standing alone, to render the evidence legally insufficient. However, the evidence is insufficient in a variety of other ways as well. For example, the evidence provides no evidence regarding the skill, experience, or reputation of any attorney for whom fees are sought other than Heard, which is necessary to show the fees associated with these other attorneys are reasonable. *See Calleja-Ahedo*, 2020 WL 3820420, at *12 & n.7

20

(holding fee affidavit was insufficient as to fees of another attorney who worked on case because it did not set forth qualifications of this other attorney). Similarly, the evidence provides no information about the qualifications of the legal assistants who worked on the case, which is also required. *See Walsh v. Gonzalez*, No. 01-21-00729-CV, 2023 WL 4110851, at \*11 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet.) (mem. op.) (stating that to recoup paralegal fees party must submit evidence of paralegal's qualifications to perform substantive legal work, identify nature of work performed, and show paralegal worked under attorney's direction and supervision, and holding evidence as to paralegal fees was legally insufficient because it did not demonstrate qualifications of paralegals); *Calleja-Ahedo*, 2020 WL 3820420, at \*12 & n.7 (concluding fee affidavit was insufficient with respect to paralegal fees because it did not set forth qualifications of paralegals or show that they performed substantive legal work under direction of attorney).

Because the evidence of Ziemer and All Heart Horse Farm's attorney's fees is legally insufficient, the trial court did not err in disregarding the jury's finding that their reasonable and necessary fees through trial were $165,000. Accordingly, we overrule their appellate issues as to the trial court's disregard of the verdict on fees.

For the same reasons, however, we hold the trial court lacked the evidence required to properly exercise its discretion and award fees in the reduced amount of $15,000. While we acknowledge that trial judges are experts on the reasonableness

21

of attorney's fees, an award of fees in a particular amount must be based on legally sufficient evidence. *See Hsu v. Conterra Servs.*, No. 01-20-00182-CV, 2021 WL 921672, at \*5 (Tex. App.—Houston [1st Dist.] Mar. 11, 2021, no pet.) (mem. op.) (recognizing trial-court expertise as to reasonableness of fees but noting that parties generally must submit evidence of reasonable hours and reasonable billing rates). Even experts cannot rely on their mere say-so and subjective opinions disconnected from evidence. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 73–74 (Tex. 2023). Thus, when the basic proof required for legal sufficiency is absent, the trial court cannot in its role as factfinder fill the gaps with its expertise alone because the reasonableness and necessity of fees pose questions of fact that must be answered with proof. *See Rohrmoos Venture*, 578 S.W.3d at 489 (stating reasonableness and necessity are questions of fact and act as limits on amount of fees recoverable).

We sustain Westheimer's issue as to the legal insufficiency of the fee evidence. Thus, we cannot affirm the $15,000 award of fees against Westheimer.

## III. Attorney's Fees for Groundless DTPA Claim

Ziemer and All Heart Horse Farm argue the trial court erred in not finding that Westheimer's DTPA claim was groundless or brought in bad faith or for the purpose of harassment. Had the trial court made this finding, they further argue, they would be entitled to recover the attorney's fees they incurred defending against

22

Westheimer's DTPA claim in addition to whatever amount of fees they are owed for successfully prosecuting their claim for breach of the sport horse syndicate contract.

## A. Standard of review

Whether a DTPA action is groundless or brought in bad faith or for the purpose of harassment are questions for the trial court to decide. TEX. BUS. & COM. CODE § 17.50(c); *WWW.URBAN.INC v. Drummond*, 508 S.W.3d 657, 674 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We review the trial court's decision as "a question of law under an abuse of discretion standard." *Drummond*, 508 S.W.3d at 674. Under this standard, the trial court abuses its discretion only if it makes its decision without reference to guiding rules and principles or acts arbitrarily or unreasonably, as when no evidence supports the court's ruling. *See id.* at 674–75.

## B. Applicable law

The DTPA provides that a trial court shall award a defendant her reasonable and necessary attorney's fees and court costs if the trial court finds that a DTPA claim "was groundless in fact or law or brought in bad faith" or "for the purpose of harassment." TEX. BUS. & COM. CODE § 17.50(c); *see also Yuen v. Gerson*, 342 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (stating fee claim under this section is independent claim for relief, not motion for sanctions).

A DTPA claim is groundless if it has no basis in law or fact and is not warranted by good-faith argument for the extension, modification, or reversal of

existing law. *Drummond*, 508 S.W.3d 673. In deciding whether a claim is groundless, the trial court must evaluate the facts available to the plaintiff and the circumstances existing when she filed her pleadings, considering whether the totality of the evidence shows an arguable basis in fact and law. *Id.* at 673–74. That a claim ultimately fails or does not prevail does not make the claim groundless. *Id.* at 674.

A DTPA claim is brought in bad faith if it is motivated by a malicious or discriminatory purpose. *Barkhausen v. Craycom, Inc.*, 178 S.W.3d 413, 422 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Whether a claim is brought for the purpose of harassment is intertwined with the issue of groundlessness. *Baroid Equip. v. Odeco Drilling*, 184 S.W.3d 1, 20 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *see also Ostrow v. United Bus. Machs.*, 982 S.W.2d 101, 106 (Tex. App.— Houston [1st Dist.] 1998, no pet.) (repeating that "it is difficult to conceive of a case which was not groundless but was brought for purposes of harassment").

## C.    Analysis

Ziemer and All Heart Horse Farm argue the trial evidence shows Westheimer's DTPA claim, which alleged various failures to provide horse-related services promised and misrepresentations about these services, is groundless. In particular, they maintain that there is no "factual basis" for these allegations.

The jury ultimately rejected Westheimer's DTPA claim. But its adverse finding does not make her claim groundless. *Drummond*, 508 S.W.3d 674.

Ziemer and All Heart Horse Farm argue that Westheimer's DTPA claim is groundless because the record contains no evidence that they failed to provide the horse-related services at issue, misrepresented their services, or that the horses received substandard care and suffered as a result of these alleged failures and lies. But Ziemer and All Heart Horse Farm concede that the groundlessness inquiry under the DTPA is not synonymous with no-evidence review. *See Donwerth v. Preston II Chrysler-Dodge*, 775 S.W.2d 634, 637 (Tex. 1989) (holding law does not "equate groundlessness with no evidence" for purposes of fee awards under DTPA).

In their argument, Ziemer and All Heart Horse Farm focus on trial. They make no effort to show what facts were available to Westheimer or what circumstances existed when she filed her pleadings, which is the pertinent timeframe. *See Drummond*, 508 S.W.3d at 673 (stating groundlessness turns on evaluation of facts available to the plaintiff and situation existing when pleadings filed); *see also Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 694 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating in context of sanctions under Rule 13 of Texas Rules of Civil Procedure, which uses same definition of groundlessness, that inquiry is whether party and counsel made reasonable inquiry into legal and factual basis of claim when document in question was filed, not what subsequent events show).

Moreover, in their argument, Ziemer and All Heart Horse Farm concede the existence of evidence that suggests Westheimer's DTPA claim has some basis in

25

fact. They acknowledge that Westheimer's expert, Karen Brown, testified the horses in question were "underweight and lacked some muscle tone." But Brown went further. For example, she testified that one of Westheimer's horses, Gracie, who had been cared for by All Heart Horse Farm, was untrained for her age in several elementary respects when she left the farm's care, so much so that Gracie was too dangerous for Brown and her staff to train. Brown stated Gracie "was very thin" and that one "could see all her ribs" as well as "her backbone and her hips" when she left All Heart Horse Farm. In sum, Brown concluded that Gracie's "physical condition was poor in that she was underweight and she had no muscle definition as she might if she had been regularly worked" and that "her training was incomplete."

Brown offered similar testimony about the health of three other horses.

Based on the preceding evidence, the trial court could have reasonably found that Westheimer's DTPA claim had a factual basis. When some evidence supports a trial court's groundlessness finding, the trial court's finding cannot be reversed as an abuse of discretion. *Drummond*, 508 S.W.3d at 674–75; *CEDA Corp. v. City of Houston*, 817 S.W.2d 846, 848–49 (Tex. App.—Houston [1st Dist.] 1991, writ denied). This remains true even if there is conflicting evidence. *See Schlager v. Clements*, 939 S.W.2d 183, 191 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding that when there is conflicting evidence as to groundlessness, trial court has discretion as factfinder and its decision can only be affirmed on appeal).

We hold the trial court did not abuse its discretion by not finding that Westheimer's claim was groundless. Hence, we overrule Ziemer and All Heart Horse Farm's issue concerning groundlessness and attorney's fees under the DTPA.

## CONCLUSION

We reverse the trial court's judgment as to attorney's fees and affirm the remainder of the trial court's judgement. We remand this cause to the trial court for a new trial limited to the determination of reasonable and necessary attorney's fees. *See Rohrmoos Venture*, 578 S.W.3d at 506 (reversing award of attorney's fees because evidence was legally insufficient and remanding to trial court solely for redetermination of attorney's fees under required standard for recovery of fees). Because an entirely new trial on the issue of fees must occur, the parties are free to relitigate all issues applicable to the recoverable amount of fees, including segregation of recoverable from unrecoverable fees. Regardless of segregation, the factfinder should consider the limited relief obtained by the prevailing parties. *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 548 (Tex. 2009) (noting that result obtained and amount of damages awarded are relevant considerations).

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

27